# United States Court of Appeals for the Federal Circuit

04-3030

ROBERT K. OJA,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

Marianne Dugan, Facaros & Dugan, of Eugene, Oregon, argued for petitioner.

Patricia M. McCarthy, Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. On the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; James M. Kinsella, Deputy Director; and, Brent M. McBurney, Attorney. Of counsel was John H. Williamson.

Appealed from: United States Merit Systems Protection Board

# United States Court of Appeals for the Federal Circuit

04-3030

ROBERT K. OJA,

                           Petitioner,

v.

DEPARTMENT OF THE ARMY,

                           Respondent.

_____

DECIDED:  April 28, 2005

_____

Before NEWMAN, CLEVENGER, and GAJARSA, <u>Circuit Judges</u>.

Opinion for the court filed by <u>Circuit Judge</u> CLEVENGER.  Dissenting opinion filed by <u>Circuit Judge</u> NEWMAN.

CLEVENGER, <u>Circuit Judge</u>.

Robert K. Oja appeals the November 22, 2002, order of the Merit Systems Protection Board ("Board" or "MSPB"), which adopted the initial decision of the administrative judge ("AJ") that denied Mr. Oja's petition for enforcement of a settlement agreement between him and the United States Army Corps of Engineers ("agency"). <u>See</u> <u>Oja v. Dep't of the Army</u>, No. SE0752990003-C-1 (MSPB Nov. 22, 2002) ("<u>Final MSPB Decision</u>").  Because Mr. Oja did not file a petition for review with this court within 60 days of the date he first received notice of the final order of the Board, <u>see</u> 5 U.S.C. § 7703(b)(1) (2000), we dismiss Mr. Oja's appeal for lack of jurisdiction.

I

On August 25, 1998, Mr. Oja was removed from his position as Chief of the Regulatory Branch of the Construction and Operations division for the Anchorage District of the United States Army Corps of Engineers. In a Standard Form 50-B Notification of Personnel Action, the agency cited as reasons for the removal "excessive absences and failure to follow leave procedures." In October, Mr. Oja filed an appeal with the Merit Systems Protection Board, alleging an adverse employment action under the Civil Service Reform Act of 1978 ("CSRA"), Pub. L. No. 95-454, 92 Stat. 1111, and discrimination under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e (2000) and Section 501 of the Rehabilitation Act of 1973 ("Rehabilitation Act"), 29 U.S.C. § 791 (2000). Mr. Oja's appeal was a so-called "mixed-case" appeal—"an appeal to the Board from an adverse personnel action, coupled with an allegation that the action was based on prohibited discrimination." Austin v. Merit Sys. Prot. Bd., 136 F.3d 782, 783 (Fed. Cir. 1998).

In March 1999, the parties entered into an agreement in settlement of the appeal. The settlement agreement stated in relevant part:

2. The U.S. Army Corps of Engineers, Alaska District . . . agrees to:
a. Convert the basis for removal of the Appellant from one of excessive absence and failure to follow leave procedures to "continued absence due to illness" with an effective date of September 5, 1998. . . .
c. Purge the Appellant's Official Personnel File (OPF) and Management Employees' Relations file (MER) regarding any reference to Appellant's removal based on grounds other than "continued absence due to illness." . . .
f. Allow Appellant two years from the effective date of his removal, to exercise relocation entitlement pursuant to a transportation agreement he signed in 1985.

(J.A. at 53-55.)   On April 5, an AJ approved the agreement and dismissed Mr. Oja's mixed-case appeal.   See Oja v. Dep't of the Army, No. SE0752990003-I-2 (MSPB Apr. 5, 1999) (approving the settlement agreement).

Subsequently, the agency took several actions thought by Mr. Oja to be breaches of the settlement agreement.   First, on June 2, 1999, Mr. Oja submitted a request for authorization of travel from Alaska to Oregon and reimbursement for real estate expenses.   The agency approved the request on June 9.   Mr. Oja sold his home in Alaska and purchased a home in Oregon.   On April 11, 2000, he submitted an "Application for Reimbursement of Expenses Incurred by DoD Civilian Employee Upon Sale or Purchase (Or Both) of Residence Upon Change of Duty Station," wherein he sought reimbursement for approximately $13,600 in real estate transaction expenses associated with his move to Oregon.   In a June 23, 2000, letter, the agency denied Mr. Oja reimbursement for real estate expenses because the agency's Joint Travel Regulations did not allow for the reimbursement of real estate expenses associated with a return to the continental United States for purposes of separation.   The agency noted in the letter that the prohibition against such real estate expenses was discussed with Mr. Oja's attorneys prior to the March 1999 settlement.   The agency later characterized its June 9, 1999, approval of real estate expenses as an error.

Second, on August 14, 1999, a Washington Post reporter posed ten questions via electronic mail regarding the agency's activities in Alaska, including one inquiring as to whether Mr. Oja quit on his own accord or was fired.   The agency responded in another electronic mail that "Mr. Oja stopped coming to work on October 23, 1997, and failed to provide information about the likelihood of returning to work.   Effective

September 5, 1998, Mr. Oja was removed from his position for excessive absence due to illness." (J.A. at 93.) On September 7, 2000, the agency posted its statement about Mr. Oja's removal on the Internet.

Believing that with these actions the agency breached paragraphs 2(a), (c) and (f) of the settlement agreement, Mr. Oja filed a petition on September 8, 2001, with the MSPB to enforce the agreement. On January 15, 2002, the AJ determined that neither the agency's response to the Washington Post reporter's inquiry about the status of Mr. Oja's departure nor the agency's subsequent Internet posting rose to the level of bad faith or negated any of the other actions taken by the agency to comply with the specific provisions of the settlement agreement. Oja v. Dep't of the Army, No. SE0752990003-C-1, at 12 (MSPB Jan. 15, 2002) (finding no breach of the settlement agreement). The AJ further determined that the settlement agreement specifically guaranteed Mr. Oja the right "to exercise relocation entitlement pursuant to a transportation agreement he signed in 1985," and that the 1985 agreement did not provide for the recovery of the expenses sought. Id. at 14.

After finding no breach, the AJ advised Mr. Oja of his right to a review of the AJ's decision by the full Board and ultimately by the Court of Appeals for the Federal Circuit. Id. at 18-19. The AJ specifically noted that any petition for review by the Federal Circuit "must be received by the court no later than 60 calendar days after the date this initial decision becomes final." Id. at 19. Mr. Oja subsequently filed a petition for review by the full Board. On November 22, 2002, the Board denied the petition. See Final MSPB Decision. The Board reminded Mr. Oja that

> [y]ou have the right to request the United States Court of Appeals for the
> Federal Circuit to review this final decision. . . . The court must receive

your request for review no later than 60 calendar days after your receipt of this order. . . . If you choose to file, be very careful to file on time. The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed.

Id. at 2.

Mr. Oja received the final decision of the Board on December 9, 2002. On January 23, 2003, Mr. Oja did not request a review by this court but instead filed a petition for review with the Equal Employment Opportunity Commission ("EEOC"). In the petition, Mr. Oja claimed that a "partial sentence" in the materials enclosed with the Board's final order provided that he could "proceed in a district court or the [EEOC]." Mr. Oja also stated in the petition that he contacted the MSPB "at their commercial telephone number in Washington, D.C." and was told that he could seek review by the EEOC of the Board's final order. The EEOC ultimately declined to consider the petition, stating that it lacked jurisdiction because "the MSPB did not address any allegations of discrimination, but rather concluded that the settlement agreement had not been breached." Oja v. Dep't of the Army, No. 03A30030 (EEOC Mar. 6, 2003).

On April 4, 2003, Mr. Oja filed a complaint in the United States District Court for the District of Oregon, asserting claims for breach of the settlement agreement under the CSRA and unlawful discrimination under Title VII and the Rehabilitation Act.[1] The agency subsequently filed a motion to dismiss. A Magistrate Judge issued findings and a recommendation wherein he concluded that because Mr. Oja did not assert a claim for discrimination in the September 8, 2001, petition for enforcement to the MSPB and

---

[1] Though Mr. Oja was not represented by counsel during his efforts to enforce the settlement agreement before the MSPB and the EEOC, he was represented by counsel during proceedings before the district court.

04-3030                                          5

instead only complained of the alleged breaches of the settlement agreement, Mr. Oja's petition was not a mixed-case complaint and thus should have been brought before the Federal Circuit. See Oja v. U.S. Army Corps of Eng'rs, No. 03-6074-TC, at 7-8 (D. Or. Sept. 8, 2003) (recommending a transfer to the Federal Circuit). The Magistrate Judge also concluded that Mr. Oja did not exhaust his administrative remedies with respect to the discrimination claim brought before the district court because he did not properly assert the claim before the agency's equal employment opportunity office, the EEOC or the MSPB. Id. at 8-9. Recognizing "some question as to whether [Mr. Oja] could have brought the action before the Federal Circuit at the time it was filed in [the district court]," the Magistrate Judge nonetheless recommended transferring the case to the Federal Circuit, pursuant to 28 U.S.C. § 1631, and noted that "there may be grounds for equitable tolling." Id. at 9.

The district court adopted the Magistrate Judge's findings and recommendation in its entirety and transferred Mr. Oja's claim for breach of the settlement agreement to this court. See Oja v. U.S. Army Corps of Eng'rs, No. 03-6074-TC (D. Or. Oct. 22, 2003) ("District Court Order"). Mr. Oja subsequently filed a "notice of appeal/petition for review." We thus consider Mr. Oja's appeal as we would an appeal directly from the Board's final order and review it pursuant to 5 U.S.C. § 7703(b)(1) and 28 U.S.C. § 1295(a)(9).

II

Our authority to review the Board's final decision is circumscribed by 5 U.S.C. § 7703. Accordingly, assuming jurisdiction properly lies, we must set aside findings or conclusions of the Board that we find to be arbitrary, capricious, an abuse of discretion,

or otherwise not in accordance with law; obtained without procedures required by law, rule or regulation having been followed; or unsupported by substantial evidence. 5 U.S.C. § 7703(c) (2000).

## III

The MSPB's power to adjudicate a dispute is limited to those matters over which the MSPB's jurisdiction is specifically provided for by law, rule or regulation.  See 5 U.S.C. § 1204(a)(1) (2000).  Though a claim of discrimination alone is not sufficient to invoke the MSPB's jurisdiction, see Cruz v. Dep't of Navy, 934 F.2d 1240, 1245 (Fed. Cir. 1991) (en banc), Congress has provided that the Board may adjudicate a claim of discrimination when it forms the basis for an agency action over which the Board would otherwise have jurisdiction, i.e., an appealable action pursuant to section 1204(a)(1). See 5 U.S.C. § 7702(a)(1)(A)-(B) (2000); see also King v. Reid, 59 F.3d 1215, 1218 (Fed. Cir. 1995).  Section 7702 thus provides the MSPB with statutory authority to hear a mixed-case appeal—"an appeal filed with the MSPB that alleges that an appealable agency action was effected, in whole or in part, because of discrimination on the basis of race, color, religion, sex, national origin, handicap or age."  29 C.F.R. § 1614.302(a)(2) (2004).

The procedures setting forth the proper means for appealing a final decision by the MSPB are described in 5 U.S.C. § 7703.  The relevant subsections—7703(b)(1) and (b)(2)—state:

> (b)(1) Except as provided in paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit. Notwithstanding any other provision of law, any petition for review must be filed within 60 days after the date the petitioner received notice of the final order or decision of the Board.

(2) Cases of discrimination subject to the provisions of section 7702 of this title shall be filed under section 717(c) of the Civil Rights Act of 1964 (42 U.S.C. 2000e-16(c)), section 15(c) of the Age Discrimination in Employment Act of 1967 (29 U.S.C. 633a(c)), and section 16(b) of the Fair Labor Standards Act of 1938, as amended (29 U.S.C. 216(b)), as applicable. Notwithstanding any other provision of law, any such case filed under any such section must be filed within 30 days after the date the individual filing the case received notice of the judicially reviewable action under such section 7702.

5 U.S.C. § 7703.

A federal employee may thus file a petition with the EEOC for review of an adverse ruling from the MSPB regarding the employee's mixed-case appeal. See id. § 7702(b). If the EEOC concurs in the final decision of the Board, the Board's decision becomes judicially reviewable in federal district court. See id. § 7702(b)(5)(A). A federal employee also may appeal directly to this court any ruling by the Board regarding the employee's adverse employment action claim, provided that a petition to review the final decision of the MSPB is filed by the employee with this court within 60 days of the date the employee first received notice of the MSPB's final decision. See id. § 7703(b)(1). However, if an employee "wishes to appeal to this court from an unfavorable decision in a mixed case, he must abandon his discrimination claim and proceed before us solely with respect to the adverse personnel action." See Lang v. Merit Sys. Prot. Bd., 219 F.3d 1345, 1347 n.2 (Fed. Cir. 2000).

With this statutory framework in mind, we recognize that this case now comes to us by way of a tangled procedural path—first to the MSPB, then to the EEOC, then to the district court, and now to this court. Mr. Oja asserts that his September 8, 2001, petition to enforce the settlement agreement initiated a mixed case, such that his ultimate appeal to the district court was proper. He requests that we determine this to

be a mixed-case appeal and transfer the case back to the district court pursuant to 28 U.S.C. § 1631. In the alternative, he requests that we accept jurisdiction pursuant to transfer under section 1631 and reverse the decision of the Board with award of damages to Mr. Oja for the agency's breach of the settlement agreement. We address each in turn.

A

Mr. Oja first argues that the petition that he filed with the MSPB to enforce the settlement agreement constitutes a mixed-case appeal, such that jurisdiction properly lies not with this court but with the district court. Mr. Oja asks that the case be transferred back to the district court pursuant to 28 U.S.C. § 1631. Section 1631 provides that

> [w]henever a civil action is filed in a court . . . or an appeal, including a petition for review of administrative action, is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action or appeal to any other such court in which the action or appeal could have been brought at the time it was filed or noticed, and the action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred.

28 U.S.C. § 1631 (2000). We cannot transfer Mr. Oja's case back to the district court pursuant to section 1631, however, because that court is not authorized to receive it. See Hill v. Dep't of the Air Force, 796 F.2d 1469, 1470 (Fed. Cir. 1986).

"[T]he judicially reviewable action by the MSPB which makes an appeal a case of discrimination under § 7703(b)(2) that can be filed in district court is that the MSPB has decided both the issue of discrimination and the appealable action . . . ." Ballentine v. Merit Sys. Prot. Bd., 738 F.2d 1244, 1246 (Fed. Cir. 1984) (quotation omitted)

(emphasis added). The district court here observed that the former was not present and that Mr. Oja's petition for enforcement of the settlement agreement did not implicate the underlying claims of discrimination. District Court Order at 42. The court concluded that Mr. Oja did not present a mixed case. Id. We agree, but for a different reason.

Our law on this issue is clear. "[A] claim of discrimination contained in a petition to enforce a settlement agreement does not give rise to mixed case status." See King, 59 F.3d at 1219. This is so because a breach by the agency is not an action appealable to the Board pursuant to 5 U.S.C. § 1204(a)(1) and is therefore not an action described in 5 U.S.C. § 7702(a)(1)(A) as that needed to support a mixed case. Id. at 1218. Instead, the Board maintains jurisdiction over a settlement agreement made part of the record pursuant to its power under 5 U.S.C. § 1204(a)(2) to enforce its own orders. Id. Mr. Oja's petition for enforcement of the settlement agreement therefore could not give rise to a mixed case and cannot now support an exercise of jurisdiction by the district court.

Because the district court is not authorized to receive an appeal from the Board's decision regarding Mr. Oja's claims for breach of the settlement agreement, section 1631 does not allow for the transfer of the case back to the district court.

B

Mr. Oja next argues that the MSPB erred in holding that the agency did not breach the settlement agreement between the parties. Our review of the Board's determination that there has been no breach is governed by 5 U.S.C. § 7703(b)(1), which provides for a 60-day filing period to commence after the date upon which Mr. Oja first received notice of the Board's final order. Mr. Oja concedes that he first received

notice of the Board's decision on December 9, 2002. Thus, pursuant to section 7703(b)(1), Mr. Oja's petition for review was due in this court within 60 days of December 9, i.e., on or before February 7, 2003. Mr. Oja did not file a complaint with the district court until April 4, 2003, and the district court did not order his case transferred to this court until October 22. Therefore, even after according Mr. Oja the benefit of the April 4, 2003, district court filing date pursuant to 28 U.S.C. § 1631, he clearly has not satisfied the 60-day requirement of section 7703(b)(1).[2]

Mr. Oja now alleges that the EEOC and the MSPB led him to believe that his claim was being addressed as a mixed-case appeal and thus properly brought before the EEOC and the district court. Our resolution of this case thus depends on whether the filing period of section 7703(b)(1) can be equitably tolled due to the alleged misrepresentations.[3] The question was squarely addressed and decided by this court in Monzo v. Department of Transportation, 735 F.2d 1335 (Fed. Cir. 1984).

---

[2] The dissent would accord Mr. Oja the benefit of his EEOC filing date. We decline to do so. First, Mr. Oja's EEOC filing by itself cannot be considered a petition for review by the Federal Circuit, as it does not request our review and instead implies the opposite—that Mr. Oja specifically sought to avoid review by this court. (J.A. at 120 ("Since receiving the final order last month from MSPB, I have spent considerable time trying to obtain clarification of my rights apart from filing with the U.S. Court of Appeals for the Federal Circuit.").)

Second, the EEOC did not, and indeed cannot, transfer under section 1631, which, as previously discussed, permits a transfer only when an action is "filed in the wrong court." Section 1631 defines "court" by reference to 28 U.S.C. § 610. Section 610 specifies that "courts" include the district courts of the United States and various other judicial bodies. The EEOC, though perhaps quasi-judicial in nature, is not among those listed in section 610. We thus do not accord Mr. Oja the benefit of the January 23, 2003, EEOC filing date and instead accord him the earliest filing date allowed by statute—the April 4, 2003, district court filing date.

[3] The dissent assumes as a matter of fact that Mr. Oja was "misdirected" by the EEOC and the MSPB, and as a result was untimely in appealing to this court. This court "sits as a court of review and is ill-suited for making factual determinations in

In Monzo, Robert Monzo, Jr., sought judicial review of a final order of the MSPB affirming a decision of the Federal Aviation Administration to remove him from his position as an air traffic controller on the grounds that he had participated in a strike against the United States and that he was absent without leave. Mr. Monzo received the Board's final order on October 11, 1983. This court received Mr. Monzo's subsequent petition for review of the final order on November 14, 1983, more than 30 days later. Id. at 1336. The Department of Transportation subsequently filed a motion to dismiss Mr. Monzo's appeal on the ground that it was barred by what then in section 7703(b)(1) was a 30-day time period for filing such an appeal.[4] Id. Mr. Monzo argued that the 30-day time period for filing should not be measured from the date he received the Board's final order, but instead should be measured from the date his counsel received the final order. If measured from the date of counsel's receipt, Mr. Monzo's petition for review in this court would have been timely. In addition, in the event the court rejected Mr. Monzo's argument that the 30-day time period ran from notice to

issues not faced initially by a trial court." La Van v. United States, 382 F.3d 1340, 1350 (Fed. Cir. 2004); see also Bailey v. West, 160 F.3d 1360, 1371 (Fed. Cir. 1998) (Michel, J., concurring) ("Unlike trial courts, we as a Court of Appeals lack adequate mechanisms to find contested or complex facts."). However, for deciding the legal issue before us, we may assume that Mr. Oja's allegations regarding his communications with the MSPB and the EEOC are true.

[4]     In 1982, our predecessor court, the Court of Claims, recognized that the 30-day period for appealing under 5 U.S.C. § 7703(b)(1) must be "strictly observed." Ramos v. United States, 683 F.2d 396, 397 (Ct. Cl. 1982). In a concurring opinion, Judge Nichols expressed concern with the harshness of the 30-day period and noted that to avoid uneven results, "the time-dishonored 30-day appeal period of the old Standard Disputes Clause for contract cases has been extended to 90 by 41 U.S.C. § 606, or under § 609, 12 months in a 'direct access' case in this court." Id. at 399. Similarly, Congress amended section 7703(b)(1) in 1998 by lengthening from 30 to 60 days the time period for filing an appeal from an adverse MSPB decision. See Federal Employees Life Insurance Improvement Act, Pub. L. No. 105-311, 112 Stat. 2950.

counsel, Mr. Monzo's Brief in Opposition to Resondent's Motion to Dismiss Appeal specifically argued that equitable tolling of the filing deadline should be granted:

> Finally, any delay in filing the Petition for Review in this matter, resulted, at least in part, from the reliance of Petitioner's counsel on notice, from the Clerk of this Court, that all proceedings in appeals of Air Traffic Controllers had been stayed by Order of this Court. Certainly, this "suspension order" created a unique situation which clouded the applicability of any of the normal rules governing appeals, and renders inappropriate any strict, limiting construction of those rules which would prevent consideration of the merits of the Petition for Review in this matter. Under these circumstances, dismissal of Petitioner's Appeal would clearly be inequitable and inappropriate, and this Court has jurisdiction to relieve Petitioner from any failure, if such there was, to file his Petition for Review within the period prescribed by 5 U.S.C. Section 7703(b)(1).

(Citations omitted.)

By precedential decision on April 6, 1984, we concluded that the 30-day time period for review is measured from the earlier date of receipt by the party or counsel of the Board's final decision, and that the time specified by statute is "statutory, mandatory, jurisdictional and bars the claim here."[5] Monzo, 735 F.2d at 1336 (emphasis added). We necessarily rejected Mr. Monzo's alternative argument, for had we accepted his plea for equitable tolling, we could not have barred the claim outright, as we did. Mr. Monzo's petition for rehearing of the April 6, 1984, decision was denied in a nonprecedential order on April 23, 1984.

---

[5] Prior to a 1982 amendment to section 7703(b)(1), which conveyed to the Federal Circuit exclusive jurisdiction over all appeals brought pursuant to that section, several other courts of appeals also held that the time period in section 7703(b)(1) was jurisdictional. See Devine v. White, 697 F.2d 421, 429 (D.C. Cir. 1983); Boehm v. Foster, 670 F.2d 111, 113 (9th Cir. 1982); Lewis v. IRS, 691 F.2d 858, 859 (8th Cir. 1982).

As we are bound by prior precedent unless and until overturned en banc, Sacco v. Dep't of Justice, 317 F.3d 1384, 1386 (Fed. Cir. 2003), we must now hold per Monzo that the time period prescribed by section 7703(b)(1) cannot be tolled.[6] Even were we not so bound, however, we think it clear that the time period of section 7703(b)(1) is not subject to equitable tolling for other reasons.

C

Six years after Monzo was decided, the Supreme Court in Irwin v. Department of Veterans Affairs indirectly altered the section 7703 landscape, and indeed the general presumption of sovereign immunity, by holding that "the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States" and that Title VII filing deadlines are thus subject to equitable tolling. 498 U.S. 89, 95-96 (1990). The Irwin decision ultimately sparked a split among the various courts of appeals over whether or not section 7703(b)(2), which generally describes procedures for the review of a mixed-case appeal, is subject to equitable tolling. Most of the circuit courts that have addressed the issue have held that section 7703(b)(2) is subject to equitable tolling because it incorporates 42 U.S.C. § 2000e-16(c), a provision of Title VII. See Montoya v. Chao, 296 F.3d 952, 957 (10th Cir. 2002); Blaney v. United States, 34 F.3d 509, 512-13 (7th Cir. 1994); Nunnally v. MacCausland, 996 F.2d 1, 4 (1st Cir. 1993); Williams-Scaife v. Dep't of Def. Dependent Sch., 925 F.2d 346, 348 (9th Cir. 1991). However, the Sixth Circuit has concluded that

---

<sub>6</sub> Pinat v. Office of Personnel Management, 931 F.2d 1544 (Fed. Cir. 1991), is consistent with Monzo. In Pinat, we rejected jurisdiction over a late-filed appeal from the Board, stating "[t]his is not a case in which the doctrine of equitable tolling applies." Id. at 1546 n.2.

<u>Irwin</u> did not overrule prior Sixth Circuit precedent holding section 7703(b)(2) to be strictly jurisdictional and not subject to tolling. <u>See</u> <u>Dean v. Veterans Admin. Reg'l Office</u>, 943 F.2d 667, 670 (6th Cir. 1991), <u>vacated and remanded on other grounds</u>, 503 U.S. 902 (1992).

Even if we assume without deciding that the Supreme Court in <u>Irwin</u> mandates that section 7703(b)(2) is subject to equitable tolling, that assumption alone does nothing to alter the decision we reached in <u>Monzo</u>. Though the obvious relationship between Title VII and section 7703(b)(2) may very well support the equitable tolling of section 7703(b)(2) in light of <u>Irwin</u>, section 7703(b)(1) in no way implicates 42 U.S.C. § 2000e-16(c) and its placement alongside section 7703(b)(2) in the Code is of no concern. There is simply no equivalent relationship between Title VII and section 7703(b)(1) such that <u>Irwin</u> might support the equitable tolling of the time period in section 7703(b)(1).

That being said, we recognize that the applicability of <u>Irwin</u> expands beyond the Title VII context. <u>See</u> <u>Bailey v. West</u>, 160 F.3d 1360, 1368 (Fed. Cir. 1998) (holding that equitable tolling is available to avoid time limitations in the statutory provisions governing veterans benefits). In <u>United States v. Brockamp</u>, the Supreme Court assumed for purposes of argument that the <u>Irwin</u> presumption of "equitable tolling" applies in a tax refund suit and noted that ordinarily, "limitations statutes use fairly simple language, which one can often plausibly read as containing an implied 'equitable tolling' exception," but that Congress can overcome the presumption by setting forth the time limitation in "unusually emphatic form." 519 U.S. 347, 350 (1997). In <u>United States v. Beggerly</u>, the Court held that the 12-year statute of limitations for suits against

the United States under the federal Quiet Title Act, 28 U.S.C. § 2409(g), was not subject to tolling because of the "unusually generous" length of the time limitation and because the statute provided that the limitations period would begin to run from the date the plaintiff "knew or should have known of the claim of the United States." 524 U.S. 38, 48-49 (1998). As correctly noted by the dissent, Irwin and its progeny thus place a general burden on Congress to avoid the presumption that particular time limitations can be tolled. We think that Congress satisfied that burden here.

It is, of course, beyond cavil that the provisions of 28 U.S.C. § 2107 and Fed. R. App. P. 4(a)—which require a notice of appeal in a civil case in a United States District Court to be filed within 30 days of the entry of judgment unless the district court extends the appeal period under Rule 4(a)(5) or reopens the appeal period under Rule 4(a)(6)— are "mandatory and jurisdictional" and not subject to equitable tolling. See Browder v. Dir., Ill. Dep't of Corr., 434 U.S. 257, 264-65 (1977). In Browder, the Supreme Court stated the rationale for Rule 4(a) as follows:

> The purpose of the rule is clear: It is "to set a definite point of time when litigation shall be at an end, unless within that time the prescribed application has been made; and if it has not, to advise prospective appellees that they are freed of the appellant's demands. Any other construction of the statute would defeat its purpose."

Id. at 264 (quoting Matton Steamboat Co. v. Murphy, 319 U.S. 412, 415 (1943)). We see no reason to carve from the applicability of that rationale an exception for section 7703(b)(1) and Fed. R. App. P. 15(a)(1) and 26(b)(2).

Rule 15(a)(1) provides that "[r]eview of an agency order is commenced by filing, within the time prescribed by law, a petition for review." Fed. R. App. P. 15(a)(1) (emphasis added). And Rule 26(b)(2) specifically excludes from this court's broad

equitable power to suspend the requirements or provisions of any of the Federal Rules of Appellate Procedure in a particular case the power to extend the time to file "a notice of appeal from . . . an administrative agency [or] board . . . unless specifically authorized by law."  Fed. R. App. P. 26(b)(2); <u>see also</u> Fed. R. App. P. 2 (discussing a court's power to suspend the Rules of Appellate Procedure, "except as otherwise provided in Rule 26(b)"); <u>Houston v. Lack</u>, 487 U.S. 266, 279-80 (1988).  These rules were presented to Congress pursuant to 28 U.S.C. § 2074 before going into effect, thus providing Congress with the opportunity to "legislate any changes in them."  <u>Houston</u>, 487 U.S. at 280.  Congress did not.

Indeed, the present case is distinguishable from our <u>en banc</u> decision in <u>Bailey v. West</u> on this very ground.  In <u>Bailey</u>, we read <u>Irwin</u> as we must here, to require that the applicability of equitable tolling be presumed when available in comparable suits of private parties, barring an expression of congressional intent to the contrary.  <u>Bailey</u>, 160 F.3d at 1366.  We expressly endorsed congressional ratification of the Federal Rules of Appellate Procedure as sufficient to show Congress's intent to override <u>Irwin</u>'s presumption in favor of tolling.  <u>Id.</u> at 1367.  We then held that equitable tolling is available to avoid time limitations in the statutory provisions governing an appeal to the Court of Veterans Appeals.  <u>Id.</u> at 1368.  In so holding, we observed that the requisite congressional intent necessary to avoid <u>Irwin</u>'s presumption of tolling provided by Rules 4 and 26(b) is absent in the <u>Bailey</u> context because the Court of Veterans Appeals prescribes its own procedural rules, and those rules are not presented to Congress.  <u>Id.</u> at 1367.  They instead go into effect after public notice and comment pursuant to 28 U.S.C. § 2071(b).  <u>Id.</u>  Such is not the case here, as Fed. R. App. P. 15(a)(1) and

26(b)(2) surely provide the necessary expression of congressional intent to avoid the tolling presumption.

Finally, we note in Stone v. I.N.S. that the Supreme Court stated that statutory provisions specifying the timing of review are "'mandatory and jurisdictional' . . . and are not subject to equitable tolling." 514 U.S. 386, 405 (1995) (quoting Missouri v. Jenkins, 495 U.S. 33, 45 (1990)) (citing Fed. R. App. P. 26(b)). In Bailey, we rejected any distinction between statutes of limitations and statutes specifying the time for review, 160 F.3d at 1367, and we read Stone to mean only "that statutory provisions specifying the time for review are not subject to equitable tolling, after Irwin, if Congress has so expressed its intent." Id. at 1366 (emphasis added). Bound as we are to our en banc decision in Bailey, we do not attempt to resurrect such a distinction now. To the contrary, our decision today reiterates that which we first recognized in Bailey—that by approving of Rules 15(a)(1) and 26(b)(2) without legislating changes to them, Congress expressed a general intent to withhold the doctrine of equitable tolling from at least those statutes that specify the time period for review by this court.

Seeing no specific authorization for the equitable tolling of section 7703(b)(1), we find that the congressionally approved statements of Rules 15(a)(1) and 26(b)(2) require the conclusion first reached in Monzo and herein followed. Compliance with the filing deadline of 5 U.S.C. § 7703(b)(1) is a prerequisite to our exercise of jurisdiction over this case.

D

Though Mr. Oja does not raise the issue, we recognize that notwithstanding the jurisdictional prerequisite that is the 60-day time period of 5 U.S.C. § 7703(b)(1), we

may still be empowered to grant an extension within the confines of the narrow doctrine of "unique circumstances." The Supreme Court first established the doctrine in Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 371 U.S. 215 (1962). Prior to expiration of the 30-day period within which to appeal a district court's rulings, as was set forth in then Fed. R. Civ. P. 73(a), the district court in Harris found excusable neglect and granted the losing party's motion to extend the time to file its notice of appeal. Id. at 216. Finding no excusable neglect and noting that the time requirement of 28 U.S.C. § 2107 and Rule 73(a) within which an appeal must be taken is "mandatory and jurisdictional," the Court of Appeals for the Seventh Circuit dismissed the appeal as untimely. Harris Truck Lines, Inc. v. Cherry Meat Packers, Inc., 303 F.2d 609, 611-12 (7th Cir. 1962). In vacating the decision, the Supreme Court stated that "[i]n view of the obvious great hardship to a party who relies upon the trial judge's finding of 'excusable neglect' prior to the expiration of the 30-day period and then suffers reversal of the finding, it should be given great deference by the reviewing court." 371 U.S. at 217. The Court determined that the "unique circumstances" of the case were such that the court of appeals "ought not to have disturbed the motion judge's ruling." Id.

Soon after Harris was decided, the Court in Thompson v. I.N.S. expounded on the "unique circumstances" doctrine by including within its ambit cases wherein a party does an act deemed proper by the district court, which, if indeed properly done, postponed the deadline for the filing of the party's appeal and led to an appeal that was timely under a new but mistaken deadline. 375 U.S. 384, 387 (1964). The Court later described the doctrine in Osterneck v. Ernst & Whinney as excusing tardiness in filing "only where a party has performed an act which, if properly done, would postpone the

deadline for filing his appeal and has received specific assurance by a judicial officer that this act has been properly done." 489 U.S. 169, 179 (1989).

The various courts of appeals have generally recognized the narrow reach of the doctrine. See Properties Unlimited, Inc. Realtors v. Cendant Mobility Servs., 384 F.3d 917, 921-22 (7th Cir. 2004) (stating that "it cannot be enough if the district court announces that it is giving the parties more time than the rules permit, because the rules then would impose no limits on the court's discretion"); Arnold v. Wood, 238 F.3d 992, 996 (8th Cir. 2001) ("Since the doctrine is equitable in character, we must interpret it narrowly, and apply it sparingly, lest its operation defeat the statutory scheme of appellate jurisdiction crafted by Congress."); Pinion v. Dow Chem., U.S.A., 928 F.2d 1522, 1524 (11th Cir. 1991) (stating that a party's failure to read Fed. R. Civ. P. 6(b) "cannot engender the kind of reasonable reliance contemplated by the Court's narrow 'unique circumstances' exception, especially in light of the mandatory and jurisdictional nature of the filing rules at issue" (emphasis added)). We, too, have noted that Harris and Thompson "presented the situation where the trial judge had granted a motion, believed timely, for an extension of time in which to file the notice of appeal," and have limited the "unique circumstances" doctrine to that setting. See Sofarelli Assocs., Inc. v. United States, 716 F.2d 1395, 1396 (Fed. Cir. 1983).

The present appeal neither includes similar factual circumstances nor arises from the same procedural context as the appeals considered in Harris and Thompson. Mr. Oja alleges only that MSPB and EEOC personnel told him after he contacted them by phone that his complaint was a "mixed-case" complaint and that he could request review by the EEOC. But even if the doctrine was generally applicable to appeals under

section 7703(b)(1), and even if the alleged phone conversations occurred exactly as Mr. Oja now reports, they are not sufficient to constitute "unique circumstances" that would justify an extension of the time period of section 7703(b)(1) when measured against the MSPB's written instruction to Mr. Oja in its final order to file an appeal with this court "no later than 60 calendar days after [Mr. Oja's] receipt of this order" and its admonition to "be very careful to file on time."  Final MSPB Decision at 2; see also Green v. Bisby, 869 F.2d 1070, 1072 (7th Cir. 1989) (noting that even a minute order that purported to extend the time for filing a motion under Rule 59 does not suffice as a specific assurance from the court).

Finally, Mr. Oja concedes that the information he received orally "seemed at odds" with the written directives from the Board about the place and time in which to seek review of the decision on his breach of contract claim.  Given the clearly official nature of the written instructions and the more casual nature of the oral advice, surely a reasonable person has some obligation to inquire further into the apparent inconsistency of the two sources.  Mr. Oja has not asserted that he made any attempt to reconcile the differing advice he admits to having received.  Here, the force of the error, if any, in the advice received orally cannot be taxed solely to the government.  In sum, we hold that the "unique circumstances" doctrine provides no basis upon which this court can grant an extension of the jurisdictional time period of 5 U.S.C. § 7703(b)(1).

IV

In conclusion, we hold that Mr. Oja's petition before the MSPB for the enforcement of a prior settlement agreement between him and the agency did not constitute a mixed-case appeal and is not reviewable by the district court.  We further

conclude that even if <u>Irwin</u> renders the filing limit of section 7703(b)(2) subject to equitable tolling, an issue we need not decide, <u>Irwin</u> does not likewise affect section 7703(b)(1) and does not change this court's binding holding in <u>Monzo</u> that section 7703(b)(1) is not subject to equitable tolling. <u>Monzo</u>, 735 F.2d at 1336. Because Mr. Oja failed to file a timely petition for review of the MSPB's decision with this court, we dismiss his appeal for lack of jurisdiction.

COSTS

No costs.

<u>DISMISSED</u>

# United States Court of Appeals for the Federal Circuit

04-3030

ROBERT K. OJA,

Petitioner,

v.

DEPARTMENT OF THE ARMY,

Respondent.

NEWMAN, <u>Circuit Judge</u>, dissenting.

I respectfully dissent from my colleagues' holding that 5 U.S.C. §7703(b)(1) is never subject to equitable tolling. I cannot agree that equity can provide no relief in a case such as this, where a seriously wronged person, relying on government misinformation, diligently attempts to navigate the maze of employment law and procedure, seeking to stem the agency's breach of the settlement agreement. Mr. Oja has yet to receive review of the Board's denial of his claim, despite efforts in three tribunals.

I

The settlement agreement required the Army Corps of Engineers to purge Mr. Oja's personnel files and to show the basis for his removal as, simply, "continued absence due to illness." Thereafter, the Army told a reporter for the Washington Post, and posted on the

Army's internet site, that Mr. Oja stopped coming to work without explanation and that he was removed for excessive absence due to illness. These statements were not in accordance with the settlement agreement. Mr. Oja states that these public statements caused him to lose several employment opportunities. He sought compliance with the settlement agreement, first before the MSPB. The MSPB refused to order enforcement, holding that the agreement had not been violated.

Mr. Oja's petition for enforcement of the settlement agreement contained allegations that the Army's actions and statements were due to discrimination. He understood, correctly, that the Federal Circuit can not receive discrimination appeals, and in "mixed cases" requires waiver of any discrimination claim. Unwilling to abandon his discrimination claim, he consulted with the MSPB and the EEOC by telephone and was told that his case was appropriate for EEOC review. Mr. Oja filed an appeal to the EEOC. On March 6, 2003, the EEOC refused to "consider" the case, holding that it had no jurisdiction to enforce a settlement agreement. The EEOC applied statute and regulation applicable to mixed cases, stating that Mr. Oja's petition was governed by 29 C.F.R. §1614.303 (EEOC regulation concerning petitions to the EEOC from MSPB decisions on mixed cases and appeals), which is grounded on 5 U.S.C. §7702 (procedure for review of mixed cases).

The EEOC informed Mr. Oja that he "had the right to file a civil action in an appropriate United States District Court" for review of the MSPB decision within thirty days of the EEOC's refusal to consider the case. Relevant statues are:

> 5 U.S.C. §7703(b)(2). Cases of discrimination subject to . . . section 7702 . . . . must be filed within 30 days . . . of the judicially reviewable action under such section 7702.

5 U.S.C. §7702(a)(3).  Any decision of the Board . . . shall be a judicially reviewable action as of -- (A) the date of issuance of the decision if the employee . . . does not file a petition with the Equal Employment Opportunity Commission . . . or (B) the date the Commission determines not to consider the decision . . . .

The conditions of §7703(b)(2) and §7702(a)(3) existed, for the EEOC decided not to "consider" the petition, rendering the Board's decision "judicially reviewable" as of March 6, 2003.

Mr. Oja filed with the district court on April 4, 2003, within the statutory thirty days of 5 U.S.C. §7703(b)(2).  The district court concluded, however, that these appeal criteria do not apply to a petition to enforce a settlement agreement, and transferred the case to the Federal Circuit under 28 U.S.C. §1631.  The district court was aware that the time for appeal from the MSPB to the Federal Circuit (sixty days from the MSPB decision) had passed, and suggested that this court could equitably toll the deadline in view of the circumstances.  The sixty-day period is codified as follows:

5 U.S.C. §7703(b)(1).  Except as provided in paragraph (2) of this subsection, a petition to review a final order or final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit. Notwithstanding any other provision of law, any petition for review must be filed within 60 days after the date the petitioner received notice of the final order or decision of the Board.

My colleagues on this panel agree that the Federal Circuit is the proper forum. However, ruling that for a transfer from the district court to the Federal Circuit, the date of filing in the district court must meet the deadline for filing in the Federal Circuit, my colleagues refuse to credit the filing date in the EEOC, which was within the 60-day limit, and rule that the filing date in the district court is too late because it was after the 60-day limit.  However, the filings in both the EEOC and the district court were timely in those

04-3030                                                   3

tribunals. Neither of these filings was late, and the transfer to the Federal Circuit from the district court was in accordance with the applicable transfer statute. On these criteria, without more, the filing in the Federal Circuit was in accordance with law and not untimely.

The panel majority faults Mr. Oja for not knowing what his advisors at the MSPB and the EEOC apparently did not know: that despite his allegations of discrimination in the agency action and in the agency's breach of the agreement, his petition for enforcement could not be reviewed by either the EEOC or the district court. Thus the panel majority refuses to equitably allow the tardy filing. Yet at every step along this convoluted trail, blazed in part by incorrect advice from the government tribunals themselves, Mr. Oja exhibited diligence in pursuing his claim, filing within the deadlines that appeared to be applicable. He is surely entitled to consideration of whether he meets the criteria for equitable tolling, even if he is not accorded the benefit of the EEOC filing date. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89 (1990) (time limits applicable to government employees are subject to equitable tolling in the same way as for private sector employees).

Courts have applied equitable tolling in a variety of circumstances where the claimant filed in the wrong venue. See, e.g., Burnett v. N.Y. Cent. R.R., 380 U.S. 424 (1965) (equitable tolling appropriate where employee filed FELA action in state court of improper venue ); Herb v. Pitcairn, 325 U.S. 77 (1945) (equitable tolling appropriate where employee filed FELA action in state court without jurisdiction); Valenzuela v. Kraft, 801 F.2d 1170 (9th Cir. 1986) (filing of discrimination complaint in state court without jurisdiction equitably tolled filing requirement). Courts have also tolled filing deadlines when the lapse was due to the other party. See, e.g., Glus v. Brooklyn E. Dist. Terminal, 359 U.S. 231

04-3030                                                    4

(1959) (misrepresentation by adversary caused plaintiff to let filing period lapse); <u>Holmberg v. Armbrecht</u>, 327 U.S. 392 (1946) (same). In <u>Irwin</u> the Court summarized, "We have allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." 498 U.S. at 96 (citations omitted).

Mr. Oja filed in the wrong venue, upon receiving advice from both the EEOC and the MSPB that filing in the EEOC was proper. The EEOC then directed him to the district court, by then after the Federal Circuit's 60-day limit. The district court duly transferred the case to the Federal Circuit. Mr. Oja has been bounced and misdirected, through no fault of his own, and has yet to receive review of the merits of his claim.

**II**

My colleagues hold that equitable tolling is not available. This holding departs from precedent and congressional intent. The distinction that the panel majority draws between §7703(b)(1) and §7703(b)(2) -- holding that <u>Irwin</u> is primarily relevant to §7703(b)(2) -- is not supported by the Court's decisions or by post-<u>Irwin</u> Federal Circuit decisions. In <u>Martinez v. United States</u>, 333 F.3d 1295, 1316 (Fed. Cir. 2003) (*en banc*), this court stated that although statutes of limitations for actions against the government are "jurisdictional in nature" that does not bar equitable tolling, for "the Court has made clear that whether equitable tolling is available in suits against the government turns on congressional intent." There is no hint that Congress intended to preclude equitable tolling in actions under §7703(b)(1) while permitting it in actions under §7703(b)(2). Such a distinction is unsupported by any statutory term or legislative history. See <u>Zipes v. TWA</u>, 455 U.S. 385,

394 (1982) (considering legislative history of §2000e-5 in assessing availability of equitable tolling).

Congress recognized that equity may be invoked to remedy statutory rigor, to avoid injustice. The Report of the Joint Committee of the House and Senate recognized the procedural complexity of cases containing allegations of discrimination, noting at least "eight different times" when an employee may bring suit, and stating that if "suit is brought in district court, the rules of equity provide that minor procedural irregularities in the administrative process for which the employee is responsible should not predetermine the outcome of the case." H.R. Conf. Rep. No. 95-1717, pt. 2, at 141-42 (1978). The Report refers to the time limits placed on the employing agency, the MSPB, and the EEOC as "mandatory -- not discretionary," emphasizing the rights of employees to have matters resolved as quickly as possible, yet states that it is "not intended" that these government entities "would automatically lose jurisdiction for failing to meet these time frames." Id. at 141. Congress made clear that it was preserving "the rules of equity" in employment cases.

The Conference Report manifests a consistent congressional intent to ensure that the claim of a federal employee will be heard in a timely manner, and that the claim will be determined on the merits and not by procedural irregularities. Thus the objectives of the Civil Service statute include: "To strengthen the protection of legitimate employee rights" and "reduce the redtape and costly delay in the [prior] personnel system." Civil Service Reform Act of 1978: Report of the Comm. on Post Office and Civil Service on H.R. 11280, 95th Cong. 3 (1978). The House Report observed that the prior system was "a bureaucratic maze which . . . mire[d] every personnel action in redtape, delay and

confusion."  Id. at 2.  The line that my colleagues today draw between §7703(b)(1) and §7703(b)(2) is not in accord with this clearly stated congressional intent.

In addition, the legislative history of §7703 states that "the wording [of §7703(a)] is similar to the general provisions governing the right of review from agency actions found in Section 702 of the Administrative Procedure Act."  S. Rep. No. 969, 95th Cong., 2d Sess. 62; see Reid v. Dep't of Commerce, 793 F.2d 277, 283 (Fed. Cir. 1986).  Heed is warranted to the Court's admonition that "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the courts restrict access to judicial review" of administrative actions.  Abbott Labs. v. Gardner, 387 U.S. 136, 141 (1967); see Ballentine v. Merit Sys. Prot. Bd., 738 F.2d 1244, 1247 (Fed. Cir. 1984) (discussing Abbott Labs. and interpreting §7703(b)(1) in favor of judicial review of agency decision).

In the context of this powerful legislative history, the Irwin Court's "rebuttable presumption of equitable tolling" was established as "a realistic assessment of legislative intent as well as a practically useful principle of interpretation."  498 U.S. at 95.  The Court adopted this "more general rule" to reduce the unpredictability associated with resolving the existence of equitable tolling on a statute by statute basis. The Federal Circuit reaffirmed the vitality of the Irwin rule in Bailey v. West, 160 F.3d 1360 (Fed. Cir. 1998) (en banc).  In Bailey we observed that "Irwin states a rule of general applicability for equitable tolling in suits against the United States," id. at 1366, and "that the doctrine of equitable tolling, when available in comparable suits of private parties, is available in suits against the United States, unless Congress has expressed its intent to the contrary."  Id.

The majority's opinion offers a quite different perception of Irwin and its progeny.  My colleagues suggest that Irwin has not been universally accepted, stating that Irwin "sparked

a split among the various courts of appeals," and that "most" of the courts have held that §7703(b)(2) is subject to equitable tolling, maj. op. at 15, while highlighting the Sixth Circuit's departure from Irwin in Dean v. Veteran's Admin. Reg'l Office, 943 F.2d 667, 670 (6th Cir. 1991). However, as the Tenth Circuit has observed, the Sixth Circuit "stand[s] alone" among the circuits in its "untenable" approach, in which it "ascertains congressional intent by parsing too finely the language of limitations statutes." Montoya v. Chao, 296 F.3d 952, 957 (10th Cir. 2002); see Nunnally v. MacCausland, 996 F.2d 1, 4 (1st Cir. 1993) (stating that the limitations period in 5 U.S.C. §7703(b)(2) is subject to equitable tolling, and describing the Sixth Circuit's decision in Dean as the only "decision since Irwin which argues to the contrary"). In addition, as observed by the First Circuit in Nunnally, 996 F.2d at 4, the Sixth Circuit's ruling on equitable tolling in Dean was not dispositive of the case.

The panel majority frames the Irwin holding as limited to Title VII, and suggests that it would be tenuous to apply Irwin to §7703(b)(1) because that section does not directly reference Title VII. See Maj. op. at 15. However, in Bailey this court rejected the argument that the "general rule is applicable to some, but not other, time limits that govern suits against the United States." 160 F.3d at 1366. Both §7703(b)(1) and §7703(b)(2) state time limits for the filing of claims against the federal employer, and both are directed to judicial "review" of such claims. Under Irwin, both are subject to the availability of equitable tolling.

In Zipes, 455 U.S. at 398, the Court held that the deadline for filing a discrimination claim with the EEOC is like a statute of limitations, and subject to equitable tolling. The Court rejected an overly technical interpretation of the Title VII timing provision as "particularly inappropriate in a statutory scheme in which laymen, unassisted by trained lawyers, initiate the process." Id. at 397 (quoting Love v. Pullman Co., 404 U.S. 522

(1972)). The Court found that the legislative intent of Title VII weighs heavily in favor of making equitable tolling available when warranted. The Court also examined precedent, and stated that although the cases contained "scattered references to the timely-filing requirement as jurisdictional, the legal character of the requirement was not at issue in those cases, and as or more often in the same or other cases, we have referred to the provision as a limitations statute." Id. at 395. The Court thus held that "a timely charge of discrimination . . . is not a jurisdictional prerequisite . . . but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." Id.

There are compelling parallels between Zipes and the present case. First, as discussed supra, the legislative history weighs heavily in favor of making equitable tolling available in meritorious situations. And second, precedent supports the availability of equitable tolling in this case. The panel majority relies heavily on Monzo v. Department of Transportation, 735 F.2d 1335, 1336 (Fed. Cir. 1984), a case decided before the Court's decision in Irwin. However in Monzo this court described the 60-day period of §7703(b)(1) as a "statute of limitations." 735 F.2d at 1336. Such a statutory period is "subject to waiver, estoppel and equitable tolling." Zipes, 455 U.S. at 398. The Monzo statement that the provision is "statutory, mandatory, [and] jurisdictional" does not preclude consideration of equitable tolling in accordance with Zipes and Irwin. The Federal Circuit, sitting *en banc* in Bailey, rejected the argument that equitable tolling is unavailable because a statute is labeled "mandatory and jurisdictional," observing that the statute in Irwin was "mandatory and jurisdictional." This court stated "We do not think [that Supreme Court precedent] can be read to mean that statutes specifying the time for review cannot be subject to equitable tolling because such statutes are mandatory and jurisdictional." Bailey, 160 F.3d at 1366.

04-3030                                    9

Nonetheless, the panel majority now holds that Monzo held that equitable tolling is never available under §7703(b)(1), and has exhumed Monzo's appeal brief in purported support of the argument that the issue was raised, although not mentioned in the court's opinion. The opinion does not mention equitable tolling, does not recite that it was raised, and does not rely on or even cite any precedent in which equitable tolling was at issue. In Monzo the question before the court was whether the 60 days should be counted from the date the MSPB's order was received by Monzo's attorney, or from the date it was received by Monzo himself -- a question that the court held to be answered by the text of §7703(b)(1), which refers specifically to the "date the petitioner received notice." Review of the Monzo appeal brief shows that its only mention of "equity" is a terse reference to the "inequity" of dismissal; there is no discussion of equitable tolling of the filing period. Monzo does not support the panel majority's ruling that equitable tolling of §7703(b)(1) is unavailable in appeals to the Federal Circuit. Thus, the view that §7703(b)(1) operates as a statute of limitations and can be tolled is fully consistent with Monzo, and supported by Zipes and Irwin.

Concerning the question of whether Irwin may have relevance to Mr. Oja's case, my colleagues turn to general procedural rules to support the position that equitable tolling is unavailable under §7703(b)(1), citing Fed. R. App. P. 15(a)(1) and 26(b)(2). The panel majority reasons that these rules establish that Congress "expressed a general intent to withhold the doctrine of equitable tolling from at least those statutes that specify the time period for review by this court." Maj. op. at 18-19. That is, that Congress in essence overruled the applicability of Irwin to this court. It is not a reasonable interpretation of the Federal Rules to suggest, as does the panel majority, that because Congress did not

04-3030                                    10

explicitly add the Irwin principle to the Rules, Congress intended to overturn the Court's decision or rebut the presumption created therein. Irwin clarified the landscape of equitable tolling, and none of the ensuing decisions citing Irwin suggest that it has been overruled by act of Congress. Had Congress intended to overrule Irwin or rebut the presumption created therein, it would necessarily have provided some indication of such intent. See Bailey, 160 F.3d at 1368 (omission of express language allowing delay is consistent with the removal of "unnecessary language where common sense would dictate tolling"). Silence cannot overturn a clear and well-accepted decision of the Court, or establish the "clear contrary intent of Congress" necessary to overcome the presumption that equitable tolling is available. Bailey, 160 F.3d at 1366.

**III**

Since no precedent precludes equitable tolling in Mr. Oja's situation, it remains to be decided whether Mr. Oja's situation warrants such relief. Mr. Oja diligently sought to pursue a claim for enforcement of the settlement agreement. His initial filing in the EEOC was in a venue that held it was without jurisdiction of enforcement proceedings. From there, he followed the instructions in the EEOC decision and filed in the district court. That court transferred the case to the Federal Circuit, expressing the view that if the transfer were deemed tardy, equitable relief could be available.

My colleagues sound a footnote of chagrin that Mr. Oja took his case first to the EEOC instead of the Federal Circuit. Maj. op. at 11 n.3. However, his search for a forum that could consider his discrimination claim does not legally or equitably bar his right to a hearing in the only forum that appears to have jurisdiction of his compliance claim. This indirect path did not divest this court of its equitable power. Precedent and justice require

that the request for equitable tolling be granted, and that Mr. Oja at long last be provided the judicial review to which he is entitled.