**Tommy R. RAMOS**

v.

**The UNITED STATES.**

**Appeal No. 14–81.**

United States Court of Claims.

July 14, 1982.

Shelby W. Hollin, San Antonio, Tex., attorney of record, for petitioner.

Timothy Noelker, Washington, D. C., with whom was Asst. Atty. Gen. J. Paul McGrath, Washington, D. C., for respondent. Thomas W. B. Porter, Washington, D. C., of counsel.

Before NICHOLS, KASHIWA and NIES,* Judges.

KASHIWA, Judge, delivered the opinion of the court:

This civilian pay case comes to us on petitioner's appeal of a final Merit Systems Protection Board (MSPB) decision. *See* 5 U.S.C. § 7703(b)(1) (Supp. III 1979). We have heard oral argument.

Petitioner Ramos was employed by the Veterans' Administration (VA) as a Housekeeping Aide, WG–1. On September 11, 1979, petitioner was scheduled to work from 12:00 midnight to 8:00 a. m. Petitioner, however, did not report for work until 5:00 a. m. and was charged with 5 hours of absence without leave. As petitioner had been absent without leave on other occasions, the VA proposed petitioner's removal on September 24, 1979. Although petitioner disputed the proposed removal, claiming his late arrival on September 11, 1979, was due to car troubles, the VA removed petitioner on November 9, 1979.

Petitioner appealed his removal to the MSPB. After a hearing, petitioner's removal ultimately was affirmed by the MSPB in an opinion dated January 13, 1981. A copy of this opinion was sent by certified mail, addressed to petitioner at his residence. As shown by the return receipt, this certified mailing was accepted by a Mary

---

28.  *Id.* at 1169.

* Helen W. Nies, Judge, United States Court of Customs and Patent Appeals, sitting by designation.

Lou Ramos on January 19, 1981. At oral argument before this court, petitioner's counsel informed the court that Mary Lou Ramos was at the time of delivery and apparently is petitioner's wife and living with petitioner at petitioner's home address. On February 20, 1981, thirty-two days after Mary Lou Ramos accepted the certified mailing which contained the MSPB decision, the petition in this case was filed.

We turn first to the question of our jurisdiction to hear this appeal. The controlling statute, 5 U.S.C. § 7703(b)(1), provides:

> (b)(1) Except [as regards a claim of discrimination], a petition to review a final order or final decision of the Board shall be filed in the Court of Claims or a United States court of appeals as provided in chapters 91 and 158, respectively, of title 28. Notwithstanding any other provision of law, any petition for review must be filed within 30 days after the date the petitioner received notice of the final order or decision of the Board.

The parties' arguments are straightforward. Respondent argues that Mary Lou Ramos' January 19, 1981, receipt of the MSPB decision must be considered as constructive receipt on that day by petitioner. Thus, respondent concludes, the February 20, 1981, petition in this court was not filed within 30 days as 5 U.S.C. § 7703(b)(1) requires and is now time barred. As authority, respondent cites cases in this court which have held the 30-day rule of 5 U.S.C. § 7703(b)(1) to be "explicit and mandatory." *E.g., Reeves v. Department of the Army,* Ct.Cl.App. No. 11–81 (order entered July 24, 1981, at 2). Respondent also analogizes to Fed.R.Civ.P. 4(d)(1) and 5(b), which effect service when the pertinent papers are left at a person's home "with some person of suitable age and discretion then residing therein." Petitioner counters that the statute requires *actual* notice to the appealing employee. As petitioner only received the MSPB decision from Mary Lou Ramos on some unspecified date *within* 30 days of the filing in this court, petitioner's argument goes, this appeal is timely. Petitioner analogizes to several Title VII (42 U.S.C. § 2000e *et seq.* (1976)) cases in which

a similar 30-day appeal period did not run until the appellant received actual notice. *See Bell v. Brown,* 557 F.2d 849 (D.C.Cir. 1977) (30-day period not triggered by notice to attorney of record); *Rea v. Middendorf,* 587 F.2d 4 (6th Cir. 1978) (same). Thus drawn, the jurisdictional issue before us is whether receipt of the certified mailing by petitioner's wife constitutes notice to petitioner within the meaning of 5 U.S.C. § 7703(b)(1). So far as the court's own research discloses, this important issue is one of first impression.

The statute itself does not address the point. The legislative history of the Civil Service Reform Act of 1978, Pub.L.No. 95–454, 92 Stat. 1111 (1978), which added 5 U.S.C. § 7703, similarly leaves the issue unresolved. *See generally* S.Rep.No.969, 95th Cong., 2d Sess. 62–63 (1978), *reprinted in* [1978–4] U.S.Code Cong. & Ad.News 2723, 2784 2785; H.Conf.Rep.No.1717, 95th Cong., 2d Sess. 142–143, *reprinted in* [1978–4] U.S.Code Cong. & Ad.News 2876. Nor do the formal regulations promulgated by the MSPB offer guidance. *See* 5 C.F.R. § 1201.118 (1982). Lacking these traditional guideposts to Congressional meaning, we must resolve the issue on other bases. Four general considerations convince us the 30-day period of 5 U.S.C. § 7703(b)(1) began to run when the certified mailing was accepted by petitioner's wife at their home.

First, in a series of recent cases this court has repeatedly recognized that the "explicit and mandatory" 30-day period for appeals under 5 U.S.C. § 7703(b)(1) must be strictly observed. *E.g., Reeves, supra; Jenkins v. United States,* Ct.Cl.App.No. 17–80 (order entered July 24, 1981, at 2–3); *Coleman v. Department of the Army,* Ct.Cl.App., 652 F.2d 69 (1981). Underlying these cases is the notion that statutes of limitations are a condition on the sovereign's consent to suit. *See, e.g., Soriano v. United States,* 352 U.S. 270, 276, 77 S.Ct. 269, 273, 1 L.Ed.2d 306 (1957); *United States v. Sherwood,* 312 U.S. 584, 590–591, 61 S.Ct. 767, 771, 772, 85 L.Ed. 1058 (1941), and cases cited thereat. Conditions placed on the sovereign's consent to suit must be strictly construed in the sover-

eign's favor, *see, e.g., Soriano, supra,* and *Sherwood, supra,* so that the waiver of sovereign immunity itself is read narrowly. *See Shippen v. United States,* 228 Ct.Cl. ——, ——, 654 F.2d 45, 49 (1981) (Kashiwa, J., dissenting), and cases cited thereat. Although not conclusive, our decisions in *Reeves, supra, Jenkins, supra,* and *Coleman, supra,* as well as the rational underpinning of those decisions, suggest that the 30-day period of 5 U.S.C. § 7703(b)(1) began when petitioner's wife accepted the certified mailing.

Second, Congress was obviously concerned when it enacted 5 U.S.C. § 7703(b)(1) that employee appeals of adverse MSPB decisions be made in a certain and limited time. *Cf. Gordon v. United States,* 227 Ct.Cl. ——, ——, 649 F.2d 837, 843 (1981) (9-month limitation period of 26 U.S.C. § 6532(c) chosen by Congress to ensure third-party tax levy controversies resolved quickly). There is simply no guarantee, however, that the employee always will be on hand to accept physical delivery of the MSPB decision, even when that decision is addressed to the employee at the employee's home. Where someone other than the employee accepts delivery, it may be impossible for an appeals court to reconstruct when the employee actually receives the MSPB decision. A corollary of this, although not argued to be applicable here, is that there is at least a potential for manipulation of the 30-day period. That considerable uncertainty and a concomitant potential for abuse exist if 5 U.S.C. § 7703(b)(1) is construed to always require actual notice is a compelling reason the limitation period here began when petitioner's wife received the certified mailing at petitioner's home address.

Third, the MSPB in the present case sent its adverse decision through the certified mail, return receipt requested and addressed to petitioner at petitioner's home. That this certified mailing in fact was received by petitioner's wife and not petitioner was an outcome beyond respondent's control. Respondent did all it could to ensure petitioner would receive prompt notice of the adverse MSPB decision. *Cf. Mullane v.*

*Central Hanover Bank & Trust Co.,* 339 U.S. 306, 319, 70 S.Ct. 652, 659, 94 L.Ed. 865 (1950) (due process requires that the means of service be "reasonably calculated to reach" those to whom notice is due). *See also Boddie v. Connecticut,* 401 U.S. 371, 380–382, 91 S.Ct. 780, 787, 788, 28 L.Ed. 113 (1971). Along these lines, Fed.R.Civ.P. 4(d)(1) and 5(b) manifest the notion that papers sent to a person's home will provide notice if the papers are left there with a suitable individual. Petitioner has alleged nothing which suggests that respondent's efforts to provide petitioner with notice were unreasonable or that the rationale behind Fed.R.Civ.P. 4(d)(1) and 5(b) should be inapplicable to this 5 U.S.C. § 7703(b)(1) appeal.

Fourth, the analogy petitioner suggests to the cases interpreting Title VII is at best imperfect. None of the cases petitioner cites presents a fact pattern resembling that here, *viz., where the appellant's wife has accepted a certified mailing addressed to the appellant at the appellant's home address.* Moreover, as at least one federal appellate court has recognized, actual notice to the appellant may not always be necessary to begin the 30-day period of 42 U.S.C. § 2000e–16(c). *Compare Craig v. Department of Health, Education and Welfare,* 581 F.2d 189, 193 (8th Cir. 1978) (although notice given *Craig* appellant insufficient to begin 30-day period, something other than actual notice to appellant may nonetheless start period) *with Bell, supra,* and *Rea, supra.* Further, as *Bell, supra,* and similar cases have indicated, interpretation of the procedural requirements of Title VII must be closely tied to Title VII's specific constitutional concerns, its detailed legislative history, and its interpretative regulations. *See Bell, supra,* at 852–856. *See also Zipes v. Trans World Airlines, Inc.,* —— U.S. ——, —— – ——, 102 S.Ct. 1127, 1132–1135, 71 L.Ed.2d 234 (1982); *President v. Vance,* 627 F.2d 353, 362 n.61 (D.C.Cir. 1980); *Bethel v. Jefferson,* 589 F.2d 631, 641–642 & n.64 (D.C.Cir.1978). As these same factors are not present as to the Civil Service Reform Act of 1978, any analogy of

the Title VII cases to this case is tenuous at best.

### CONCLUSION OF LAW

These reasons all convince us that on the facts of this case, receipt of the MSPB decision by petitioner's wife on January 19, 1981, constituted notice to petitioner within the meaning of 5 U.S.C. § 7703(b)(1). As that statute allows only 30 days in which to file an appeal after such notice, it follows that petitioner's appeal filed February 20, 1981, was untimely. The petition must be and is hereby dismissed.

NICHOLS, Judge, concurring:

I concur. The 30-day notice jurisprudence is not a branch of law with which judges are anxious to be identified, but few of us can avoid it. Congress *will* set 30-day periods. If the time were 2 years, no doubt someone would file still 1 day too late, but the shorter the period, the greater the likelihood of harsh and uneven results. For this reason the time-dishonored 30-day appeal period of the old Standard Disputes Clause for contract cases has been extended to 90 by 41 U.S.C. § 606, or under § 609, 12 months in a "direct access" case in this court. I am not willing by concurring to indicate I would not construe this statute strictly to save the appeal if given any reasonable handle for doing so.

Mr. Ramos had asked for correspondence about his case to be sent to his home. The decision expressly notified him how much time he had to appeal for court review. He retained counsel only on the 16th. No offer of proof is made to show he did not receive the decision on the day his wife receipted for it. No other explanation of the delay is offered.

By our "Charlson" rule, 21(b)(2)(iii) he might on proper motion have established a filing date earlier than the date stamped by the clerk if he could show the facts the rule prescribes. *Cf. Charlson Realty Co. v. United States*, 181 Ct.Cl. 262, 384 F.2d 434 (1967). This appeal was deposited in the mail in San Antonio, Texas, the seventeenth, and would have had to arrive on the eighteenth to be timely, actually the eighteenth or constructively as established pursuant to the rule. Nothing remains possible but a weary shrug and a turn aside to more agreeable objects of contemplation.