# United States Court of Appeals for the Federal Circuit

---

**LAURENCE M. FEDORA,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

**UNITED STATES POSTAL SERVICE,**
*Intervenor*

---

2015-3039

---

Petition for review of the Merit Systems Protection Board in No. SF-0752-13-0433-I-1.

---

Decided: February 16, 2017

---

LAURENCE M. FEDORA, Portland, OR, pro se.

LINDSEY SCHRECKENGOST, Office of the General Counsel, Merit Systems Protection Board, Washington, DC, for respondent. Also represented by BRYAN G. POLISUK.

RUSSELL JAMES UPTON, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for intervenor. Also represented

by BENJAMIN C. MIZER, ROBERT E. KIRSCHMAN, JR., PATRICIA M. MCCARTHY.

————————————

Before DYK, PLAGER, and REYNA, *Circuit Judges.*

Opinion for the court filed by *Circuit Judge* DYK.

Dissenting opinion filed by *Circuit Judge* PLAGER.

DYK, *Circuit Judge.*

Laurence Fedora petitions for review of a final order of the Merit Systems Protection Board ("Board") dismissing his appeal for lack of jurisdiction. Because Mr. Fedora failed to timely file his petition for review with this court within 60 days after the Board issued notice of its final order, we dismiss his petition for review for lack of jurisdiction. *See* 5 U.S.C. § 7703(b)(1)(A).

BACKGROUND

Mr. Fedora began his employment with the United States Postal Service in 1980. He was employed as a Mail Handler in the Portland Processing and Distribution Center at the time of his retirement on August 31, 2012. On April 27, 2013, Mr. Fedora filed an appeal with the Board alleging that his retirement was involuntary and amounted to constructive discharge. He claimed that he was forced to perform work in violation of his medical restrictions, was harassed, and was improperly threatened with removal and loss of his pension.

On August 12, 2013, the administrative judge ("AJ") found that Mr. Fedora had failed to make a non-frivolous allegation that his retirement was involuntary and dismissed his appeal for lack of jurisdiction. Mr. Fedora then filed a petition for review by the Board.

On August 15, 2014, the Board issued a final order affirming the initial decision by the AJ. The Board's final order stated that Mr. Fedora had "the right to request

review of [its] final decision by the United States Court of Appeals for the Federal Circuit" and that the "court must receive [his] request for review no later than 60 calendar days after the date of [the Board's] order." App. 36. He filed a petition for review in this court on October 20, 2014. His petition for review was filed within 60 days of his receipt of the order (August 19, 2014),[1] but not within 60 days of issuance of the notice (August 15, 2014).

## DISCUSSION

### I

This court has jurisdiction to review final decisions by the Board pursuant to 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1)(A). However, this jurisdiction is circumscribed by the terms of § 7703(b)(1)(A), which provides: "[n]otwithstanding any other provision of law, any petition for review shall be filed within 60 days after the Board issues notice of the final order or decision of the Board." We have previously held that the requirements of this provision are "statutory, mandatory, [and] jurisdictional," *Monzo v. Dep't of Transp.*, 735 F.2d 1335, 1336 (Fed. Cir. 1984), and that "[c]ompliance with the filing deadline of 5 U.S.C. § 7703(b)(1) is a prerequisite to our exercise of jurisdiction," *Oja v. Dep't of the Army*, 405 F.3d 1349, 1360 (Fed. Cir. 2005).

The dissent suggests that these cases are no longer good law because the Supreme Court in recent years has recognized that not all statutory time limits are properly characterized as jurisdictional. We think that those cases do not undermine our holdings that the appeal period of § 7703(b)(1) is jurisdictional. Many of the Supreme Court's cases cited by the dissent hold generally that

---

[1] Since 60 days from August 19, 2014 would end on October 18, 2014, a Saturday, the period would run until Monday, October 20, 2014. *See* Fed. R. App. P. 26(a)(1).

limitations periods ("claims-processing rules") are not jurisdictional. *See, e.g.*, *United States v. Kwai Fun Wong*, 135 S. Ct. 1625, 1638 (2015) (holding that the time limits for filing a claim against the United States under the Federal Tort Claims Act "are nonjurisdictional and subject to equitable tolling"); *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96 (1990) (holding that there is a rebuttable presumption that the statutory time limit for filing a Title VII suit against the United States after final agency action is subject to equitable tolling). Those cases do not concern appeal periods. Appeal periods to Article III courts, such as the period in § 7703(b)(1), are controlled by the Court's decision in *Bowles v. Russell*, 551 U.S. 205 (2007).

In *Bowles*, the Supreme Court reaffirmed that "the taking of an appeal within the prescribed time is 'mandatory and jurisdictional.'" 551 U.S. at 209 (quoting *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 61 (1982)). The Court recognized that "several . . . recent decisions have undertaken to clarify the distinction between claims-processing rules and jurisdictional rules, [but concluded that] none of them calls into question [the Court's] longstanding treatment of statutory time limits for taking an appeal as jurisdictional." *Id.* at 210. Accordingly, the Court held that compliance with the appeal period prescribed in 28 U.S.C. § 2107(c) is jurisdictional and not subject to equitable tolling or the unique circumstances doctrine. *Id.* at 212–14.

The Supreme Court's subsequent opinion in *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010), explicitly recognized the distinction between statutory time limits for filing appeals and time limits or other requirements in non-appeal contexts. There, the Court stated:

> In *Bowles*, we considered 28 U.S.C. § 2107, which requires parties in a civil action to file a notice of appeal within 30 days . . . . After analyzing

§ 2107's specific language and this Court's historical treatment of the type of limitation § 2107 imposes (*i.e.*, statutory deadlines for filing appeals), we concluded that Congress had ranked the statutory condition as jurisdictional. . . . *Bowles* emphasized that this Court had long treated such conditions as jurisdictional, including in statutes *other* than § 2107, and specifically in statutes that predated the creation of the courts of appeals.

*Id.* at 168 (citations omitted).

Relying on *Henderson v. Shinseki*, 562 U.S. 428 (2011), which concerned the time limit for filings appeals to the Court of Appeals for Veterans Claims, an Article I court, the dissent suggests that *Bowles* does not govern "judicial review of administrative decisions." *Id.* at 437. In *Henderson*, the Court held that the appeal period was not jurisdictional because of the "unique administrative scheme" that is "unusually protective of claimants." *Id.* at 437–38 (internal quotation marks omitted). To be sure, *Henderson* initially distinguished *Bowles* on the ground that it "concerned an appeal from one court to another court [and t]he 'century's worth of precedent and practice in American courts' on which *Bowles* relied involved appeals of that type." *Id.* at 436 (quoting *Bowles*, 551 U.S. at 209–10). But the Court went on to discuss at length judicial review of administrative agencies, citing to *Stone v. INS*, 514 U.S. 386, 405 (1995), which held that the deadline for seeking judicial review of final removal orders by the Board of Immigration Appeals is jurisdictional. The *Henderson* Court also noted that lower courts uniformly treat the time limit for review of certain final agency decisions under the Hobbs Act as jurisdictional. *Henderson*, 562 U.S. at 437. The Court eventually concluded that none of its prior cases required that the appeal period from the Veterans Administration to an Article I court be jurisdictional since "[a]ll of those cases involved *review by Article III courts*." *Id.* (emphasis add-

ed). The *Henderson* Court thus made clear that appeal periods to Article III courts are jurisdictional.

Since this case concerns the timeliness of Fedora's appeal to this court, an Article III court, *Bowles*—not *Henderson*—is the governing authority. Accordingly, this court lacks jurisdiction over petitions for review that fail to comply with the requirements of § 7703(b)(1)(A).

As the Supreme Court also made clear in *Bowles*, the jurisdictional nature of the timeliness requirement precludes equitable exceptions. 551 U.S. at 213–14. Our own prior decisions have likewise held that § 7703(b)(1) is not subject to equitable tolling. *Oja*, 405 F.3d at 1357–60; *see also Marandola v. United States*, 518 F.3d 913, 914–15 (Fed. Cir. 2008) (holding that the filing requirements of 28 U.S.C. § 2107(b), Fed. R. App. P. 4(a)(1)(B), and R. Fed. Cl. 58.1 are "mandatory and jurisdictional" and cannot be waived or equitably tolled).

## II

A prior version of § 7703(b)(1) provided that "any petition for review must be filed within 60 days after the date the petitioner *received* notice of the final order or decision of the Board." *See* 5 U.S.C. § 7703(b)(1) (1998) (emphasis added). But, in 2012, this provision was amended to require "fil[ing] *within 60 days after the Board issues notice of the final order or decision of the Board.*" Whistleblower Protection Enhancement Act of 2012, Pub. L. No. 112-199, § 108(a), 126 Stat. 1465, 1469 (2012) (emphasis added). By its plain terms, § 7703(b)(1)(A) as amended begins the 60-day clock on the date the Board issues notice of its final order, not the date the petitioner receives notice of that decision. Here, notice of the final decision was issued on August 15, 2014. This court did not receive the petition until October 20, 2014, 6 days after the 60-day period had run.

## III

Mr. Fedora thus failed to timely file his petition for review within the 60-day period required by § 7703(b)(1)(A). Under § 7703(b)(1)(A) Mr. Fedora was required to file his petition for review "within 60 days after" August 15, 2014—*i.e.*, by October 14, 2014. Since filing requires actual receipt by the court, not just timely mailing, *see Pinat v. Office of Pers. Mgmt.*, 931 F.2d 1544, 1546 (Fed. Cir. 1991); Fed. R. App. P. 25(a)(2)(A), Mr. Fedora missed the October 14, 2014 filing deadline.[2]

Mr. Fedora points out that the Board's final order directed him to this court's "Guide for Pro Se Petitioners and Appellants," which incorrectly instructed that a petitioner "may file a petition for review in this court within 60 days of receipt of the Board's decision." App. 5. Mr. Fedora claims to have relied on this guidance in filing his petition for review. But as previously stated, we do not have the authority to equitably toll the filing requirements of § 7703(b)(1)(A). *See Bowles*, 551 U.S. at 213–14; *Oja*, 405 F.3d at 1357–60. Moreover, the Board's final order gave notice to Mr. Fedora regarding his rights for further review and specifically stated that the 60-day period would begin on the date the final order was issued. It imparted the importance of the filing deadline, cautioning to "be very careful to file on time" since the "court must receive [the] request for review no later than 60 calendar days after the date of [the] order." App. 36 (citing 5 U.S.C. § 7703(b)(1)(A) and noting the revision effective December 27, 2012). Unfortunately for Mr. Fedora, he failed to follow these instructions and missed the October 14, 2014 deadline.

---

[2] The fact that Mr. Fedora mailed his petition on October 11, 2014, within the 60-day period, is irrelevant since the court did not receive it until October 20, 2014.

**DISMISSED**

Costs

No costs.

# United States Court of Appeals
# for the Federal Circuit

---

**LAURENCE M. FEDORA,**
*Petitioner*

**v.**

**MERIT SYSTEMS PROTECTION BOARD,**
*Respondent*

**UNITED STATES POSTAL SERVICE,**
*Intervenor*

---

2015-3039

---

Petition for review of the Merit Systems Protection Board in No. SF-0752-13-0433-I-1.

---

PLAGER, *Circuit Judge*, dissenting.

In the case before us, the majority, having labelled the time bar "mandatory and jurisdictional," proceeded to rule that "this court lacks jurisdiction over petitions for review that fail to comply with the [statutory deadline for filing]." Because that conclusion does not do justice to the complexities of the issue Mr. Fedora presents, is inconsistent with current Supreme Court guidance, and in my view probably results in a wrong conclusion that is based neither on good law nor fundamental fairness, I respectfully dissent.

1.

Mr. Fedora asks this court to review a decision of the Merit Systems Protection Board ("MSPB" or "Board"). In that decision, the MSPB affirmed a determination by its administrative judge that Mr. Fedora had failed to state a Board-reviewable claim of involuntary, i.e., forced, retirement from the Postal Service, and that therefore the MSPB could not help him. Upon receipt of the Board's order, Mr. Fedora's attempt to appeal to this court for review of that decision ran into two procedural hurdles. First, by fully following the official printed instructions, provided by this appellate court, regarding filing deadlines, he missed the statutory deadline for filing his petition for review by several days—the instructions were in error. Second, by using the Postal Service to send in his petition as our procedures authorize, his former employer, in a bit of irony, apparently delivered his petition to the court in Washington after an unexplained delay—it was stamped received by this court nine days after it was mailed from Portland. As a result, his appeal petition was considered received six days late. The question is whether there is anything that can be done about the fact of his late filing, which would otherwise preclude his appeal.

Citing a 1984 decision of this court, *Monzo v. Department of Transportation*, 735 F.2d 1335 (Fed. Cir. 1984), the majority decides this case by invoking the old shibboleth that the time bar is "mandatory [and] jurisdictional." As the Supreme Court itself has recently emphasized, see the discussion below, the term "jurisdiction" is one of the most misused and ambiguous terms in the legal vocabulary.

When used correctly, the term "jurisdiction," for example when used in the phrase "subject-matter jurisdiction," refers to a well-understood characteristic of judicial process: the authority of a court to exercise judicial power

over a case before it. To illustrate: by statute this court has *subject-matter jurisdiction* to review final decisions rendered by the Board. *See* 28 U.S.C. § 1295(a)(9) ("The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction—(9) of an appeal from a final order or final decision of the Merit Systems Protection Board, pursuant to sections 7703(b)(1) and 7703(d) of title 5 . . . .").[1] Indeed, our subject-matter jurisdiction over this class of decisions is exclusive—no other court of appeals may hear and decide these appeals.

When used in other contexts, the term "jurisdiction" can be used as a conclusory label to support a result, often with little if any analysis. An example is the lead case the majority cites as authority for the outcome in this case. *Monzo*, like this case, involved a petition for review of an MSPB decision adverse to the petitioner. The statute at issue provided that any petition for review "must be filed within 30 days after the date the petitioner received notice of the final order or decision of the Board." 5 U.S.C. § 7703(b)(1) (1982). The evidence in the case indicated that petitioner received notice of the decision on October 11, 1983, and his attorney received it on October 14. The petition for review was received by the court on November 14. The court held that the date the attorney received notice was irrelevant; the statute refers only to the petitioner. The court in a one paragraph Order announced that "[t]he 30-day period for appeal is statutory, mandatory, jurisdictional, and bars the claim here." 735 F.2d at 1336.

---

[1] Another necessary ingredient for the exercise of judicial power in a given case is *personal jurisdiction* over the parties. This involves quite different considerations from those affecting subject-matter jurisdiction, and is not at issue in this case. *See, e.g., Daimler AG v. Bauman*, 134 S. Ct. 746 (2014).

The only explanation offered for that conclusion was a cite to *Ramos v. United States*, 683 F.2d 396 (Ct. Cl. 1982), in which the Claims Court held that receipt by petitioner's wife of the decision of the Board constituted notice to petitioner within the meaning of the statute. The *Ramos* majority emphasized that "statutes of limitations" are a condition on the sovereign's consent to suit, and must be strictly construed. The concurring judge suggested he would not construe the statute so strictly if given "any reasonable handle for doing so," but since Mr. Ramos did not offer one, he concluded his only alternative was "a weary shrug and a turn aside to more agreeable objects of contemplation." *Id.* at 399.

The second case on which the majority bases its result here is the more recent case of *Oja v. Department of the Army*, 405 F.3d 1349 (Fed. Cir. 2005). Mr. Oja sought enforcement by the MSPB of a settlement agreement he had with the Army Corps of Engineers, the outcome of a contentious dispute involving his performance and subsequent removal from his office in the Corps. The Federal Circuit's opinion is considerably more detailed than *Monzo*; as the opinion noted, the case came to this court by way of "a tangled procedural path—first to the MSPB, then to the EEOC, then to the district court, and now to this court." *Id.* at 1354.

The opinion discusses at length a number of issues raised by this 'tangled procedural path,' but for purposes of our case here, the only relevant point is that the *Oja* majority concluded that, "even if . . . the filing limit of section 7703(b)(2) [is] subject to equitable tolling, an issue we need not decide, [that] . . . does not likewise affect section 7703(b)(1) and does not change this court's binding holding in *Monzo* that section 7703(b)(1) is not subject to equitable tolling." *Id.* at 1361. The court then dismissed the appeal for "lack of jurisdiction." *Id.* (I note in passing that *Oja* was decided before any of the Supreme Court's later opinions discussed below.)

*Oja's* reliance on *Monzo* for the proposition that the statute at issue is not "subject to equitable tolling" is curious, since the words "equitable tolling" do not appear in the *Monzo* opinion; its legal point was limited to the statement that the statute was "mandatory [and] jurisdictional." Which raises the interesting question—what is the relationship between jurisdiction and equitable tolling?

2.

The answer to that question is that these are two separate and distinct legal issues. Subject-matter jurisdiction is granted by Congress to courts it creates under Article III of the Constitution, pursuant to Congress's Constitutional powers.[2] Subject-matter jurisdiction describes the kinds of disputes a particular court is empowered to decide. Constitutionally, if a court lacks subject-matter jurisdiction over a case, the court is without power to grant any remedy, no matter how warranted; that necessarily includes equitable tolling of a statutory deadline.[3]

---

[2] This statement is strictly true only for the lower federal courts, the district and appellate courts created by congressional act. With the exception of the Supreme Court, federal courts, both trial and appeal, are dependent on congressional authorization for their structure and subject-matter jurisdiction. The Supreme Court, established by the Constitution itself, has assigned to it by the Constitution certain exclusive subject-matter areas. *See generally* U.S. Const. art. III.

[3] In the felicitous phrasing of Justice Breyer, concurring in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 111 (1998), determining a court's subject-matter jurisdiction at the outset of a case "helps better to restrict the use of the federal courts to those adversarial

Assuming, however, that a court has subject-matter jurisdiction over the cause, the question of whether a statutory condition, such as a time bar, is "jurisdictional," and thus determinative of eligibility for equitable tolling of an otherwise apparently mandatory deadline, is a question the Supreme Court's cases have wrestled with in the last decade or so.  And this is a question on which I find the majority demonstrates insufficient understanding of these recent cases from the Supreme Court.

As the comment from the *Ramos* case, *supra*, indicated, at an earlier time the general view espoused by the Supreme Court among others was that if Congress imposed a statutory deadline for seeking judicial relief, Congress intended that deadline to be strictly enforced. Hence the almost religious repetition in the early cases of the phrase about "mandatory and jurisdictional."

"Jurisdictional" in that context did not mean that the court somehow lost subject-matter jurisdiction, i.e., the authority to decide the kind of dispute at issue.  Instead, it was a shorthand way of saying that the court had had its power to adjudicate *this particular case* withdrawn, because Congress intended that the adjudicative power be withdrawn when the time-filing requirement was not met. That was then; then came *Irwin.*

In 1990, *Irwin v. Department of Veterans Affairs*[4] turned the law of "mandatory and jurisdictional" and its concomitant equitable tolling doctrine on its head, or so it was thought.  Shirley Irwin was fired from his job with the Veterans Administration.  Pursuant to the Civil Rights Act of 1964[5] ("the Act"), he first sought help from

---

disputes that Article III defines as the federal judiciary's business."

[4]    498 U.S. 89 (1990).

[5]    Pub. L. 88-352, 78 Stat. 241 (1964), as amended.

the Equal Employment Opportunity Commission ("EEOC"), alleging an unlawful discharge based on race and disability. After getting a letter from the EEOC affirming his dismissal, he filed a complaint in the district court, as provided by the Act. However, his complaint was not filed within 30 days of the EEOC's decision, which was the time deadline stated in the Act.

At the Government's urging, the district court held it was without jurisdiction, a holding affirmed by the Fifth Circuit Court of Appeals. *Id.* at 91. The court of appeals reasoned that the 30-day period operated as an absolute jurisdictional limit, and that the district court could not excuse Irwin's late filing because federal courts lacked "jurisdiction" over his untimely claim. *Id.*

The Supreme Court reversed. The Court first recited, with due citation, the traditional doctrine that congressional waivers of sovereign immunity (the doctrine, inherited from the Kings of England, that the sovereign, here the Federal Government, generally is immune from suit for its wrongful acts) must be strictly construed, and that a waiver of sovereign immunity cannot be implied but must be unequivocally expressed.

But then the Court announced that, once Congress has made such a waiver—presumably by granting federal courts subject-matter jurisdiction over a particular class of cases against the Government—the question of equitable tolling applicable to statutory time bars in a given case would be decided "in the same way that it is applicable to private suits . . . . We therefore hold that the same rebuttable presumption of equitable tolling applicable to suits against private defendants should also apply to suits against the United States." *Id.* at 95.

*Irwin* was thus understood to say that once Congress authorized a suit against the Federal Government in a particular subject-matter area, the statutory conditions placed on that suit in the form of a time bar in which suit

must be filed were to be presumed to be subject to equita-
ble relief for the same reasons they would be in private
litigation. Thus, unless Congress specifically indicated
otherwise, such time limits were no longer to be consid-
ered "jurisdictional," that is, intended by Congress to be
automatic and unwaivable withdrawals of a court's power
to adjudicate.

Two issues have emerged in the cases, discussed next,
following *Irwin*—first, has Congress expressed a clear
intention to make a stated condition in a suit against the
Government—such as the time within which a plaintiff
must file the suit in court—a bar to a court's exercise of
power over a particular case, i.e., a "jurisdictional" bar? If
not, the *Irwin* presumption is not rebutted, and the stated
condition or bar is subject to equitable relief.

Second, assuming the condition is one subject to equi-
table relief, is such relief available for a particular plain-
tiff in the particular case? That depends on the particular
facts. For example, in the *Irwin* case itself, this reversal
of long-standing doctrine dealing with 'jurisdiction' did
not help Mr. Irwin. The Court explained that federal
courts "have typically extended equitable relief only
sparingly," and gave illustrations: a plaintiff who diligent-
ly pursued his remedies by filing within the time limit,
but filed a defective pleading; and a complainant who "has
been induced or tricked by his adversary's misconduct
into allowing the filing deadline to pass." *Id.* at 90.[6]

Concluding that Mr. Irwin's failure to file timely be-
cause his lawyer was away was "at best a garden variety
claim of excusable neglect," it was not entitled to equita-

---

[6]    See *Bailey v. West*, 160 F.3d 1360 (Fed. Cir. 1998)
(en banc) for a discussion of factors entitling a petitioner
to equitable tolling.

ble intervention. *Id.* at 96. The judgment of the court of appeals was affirmed. *Id.*

Since the *Irwin* decision, the Supreme Court, as well as the lower courts, have wrestled primarily with the first of these two questions: in a given statutory setting, has Congress somehow expressed a clear enough intention to make the failure to comply with a condition to judicial relief against the Government's conduct, such as a filing deadline, an absolute bar? To put it in terms applicable here, has the "rebuttable presumption of equitable tolling" of the time bar in this case been rebutted by a clear congressional expression of its intention to the contrary?

In reality, Congress is not known to address this issue in the specific terms of jurisdictional bar vs. equitable relief. The resolution of the issue has become one of construing the phrases in which the condition, the time bar for example, is expressed. This may be seen in such indicators as where in a complex of statutory provisions the bar appears vis-à-vis where the court's basic subject-matter authorization appears, how the particular bar is stated, and even how often a court has addressed the issue without congressional reaction.

The Supreme Court's recent cases, despite *Irwin's* stated desire to no longer decide these cases in an *ad hoc* manner but rather to "adopt a more general rule to govern the applicability of equitable tolling suits against the Government," *id.* at 95, have flipped back and forth based on the various factors the particular opinion seemed to consider relevant.

3.

The question of jurisdictional vs. nonjurisdictional statutory conditions to judicial relief has come before the Supreme Court in both time bar and other statutory contexts. *Arbaugh v. Y&H Corp.*, 546 U.S. 500 (2006) raised a somewhat different bar, in that the condition at

issue was not a time-bar regarding filing of an appeal, but rather a condition on whether the statute at issue was applicable to the defendant employer. The case arose under Title VII of the Civil Rights Act of 1964 (the "Act"). The Act required that an employer subject to the Act have 15 or more employees. The defendant had not raised the issue of whether the employer had the requisite number of employees—and when later raised there was a disputed question regarding the issue—until the case was on appeal. If the issue was simply an element in the plaintiff's claim for relief, the employer's attempt to raise the issue as a defense at the appellate stages of the case would be barred. *See* Fed. R. Civ. Proc. 12(h)(2) (an objection under Rule 12(b)(6) may not be asserted post-trial). On the other hand, if the numerosity requirement went to the court's real "jurisdiction," that would be an issue that is not too late to raise on appeal, *see* Fed. R. Civ. P. 12(h)(3), and indeed since it went to the court's power to decide the case, it is one the court must attend to even if the parties do not. *Arbaugh*, 546 U.S. at 514.

The Court recapped the newer thinking about jurisdiction. Justice Ginsburg, writing for a unanimous court, said: "'Jurisdiction,' this Court has observed, 'is a word of many, too many meanings.' This Court, no less than other courts, has sometimes been profligate in its use of the term. For example, this Court and others have occasionally described a nonextendable time limit as 'mandatory and jurisdictional.' But in recent decisions, we have clarified that time prescriptions, however emphatic, 'are not properly typed "jurisdictional."'" *Id.* at 510 (citations omitted).

The Court described contrary decisions as "unrefined dispositions," "'drive-by jurisdictional rulings'" that "should be accorded 'no precedential effect' on the question whether the federal court had authority to adjudicate the claim in suit." *Id.* at 511 (quoting *Steel Co.*, 523 U.S. at 91). The Court acknowledged that Congress could have

made the employee-numerosity requirement "jurisdictional," but noted that "the 15-employee threshold appears in a separate provision that 'does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.'" *Id.* at 515 (citation omitted). The Court held the numerosity provision to be an element of a plaintiff's claim for relief, not a jurisdictional issue.

In *Bowles v. Russell*, 551 U.S. 205 (2007), decided but a year after *Arbaugh*, the Court came to the opposite conclusion. *Bowles* arose in a murder case, involving the late filing of an appeal from an adverse district court decision in a habeas appeal. An attempt had been made to extend the defendant's time for appeal pursuant to court rule, but the filing did not comply with the time limit provided in the statute on which the rule was based. The court of appeals held that it lacked jurisdiction to hear the case, holding that the provision allowing a district court to extend the filing period for fourteen days for reopening of a case was "jurisdictional."

The Supreme Court affirmed, in an opinion that seemed to refute *Irwin* and *Arbaugh*. Justice Thomas, writing for a five Justice majority, stated that, "Although several of our recent decisions have undertaken to clarify the distinction between claims-processing rules and jurisdictional rules, none of them calls into question our longstanding treatment of statutory time limits for taking an appeal as jurisdictional." *Id.* at 210. The *Irwin* presumption was not mentioned or considered; *Arbaugh* was distinguished: "Nor do[es] *Arbaugh* . . . aid petitioner. In *Arbaugh*, the statutory limitation was an employee-numerosity requirement, not a time limit." *Id.* at 211 (citations omitted). The court of appeals was affirmed.

The stark contrast between the approach taken in *Arbaugh* and that in *Bowles* did not remain unaddressed very long. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010), decided the following year, turned on a somewhat

arcane issue—whether a provision of the Copyright Act regarding registration precluded appeal in a case arising from claims of infringement of unregistered works. In terms relevant here, the issue was whether the requirements of the statute were to be treated as "jurisdictional," and thus a bar to the appeal. The Court stated the question as "whether § 411(a) 'clearly states' that its registration requirement is 'jurisdictional.'" *Id.* at 163 (quoting *Arbaugh*, 559 U.S. at 515). The Court answered, "It does not." *Id.*

The Court then explained its decision in *Bowles*: "*Bowles* did not hold that any statutory condition devoid of an express jurisdictional label should be treated as jurisdictional simply because courts have long treated it as such. Nor did it hold that all statutory conditions imposing a time limit should be considered jurisdictional. Rather, *Bowles* stands for the proposition that context, including this Court's interpretation of similar provisions in many years past, is relevant to whether a statute ranks a requirement as jurisdictional." *Id.* at 167–68. The court of appeals was reversed; the statutory provision was held nonjurisdictional. It is worth noting that *Reed Elsevier*, with its explanation of *Bowles*, was written by the same justice who authored *Bowles*.

In an opinion concurring in part, Justice Ginsburg, the authoring Justice in *Arbaugh*, offered a further explanation: "*Bowles* and *Arbaugh* can be reconciled without distorting either decision, however, on the ground that *Bowles* rel[ied] on a long line of this Court's decisions left undisturbed by Congress." *Id.* at 173.

Subsequently, in *Henderson v. Shinseki*, 562 U.S. 428 (2011), the Court addressed directly a statutory time bar on review from this court. The case involved an appeal from the Board of Veterans Appeals to the Court of Appeals for Veterans Affairs. To appeal to the Veterans Court, the appellant must file a notice of appeal with the

court within 120 days after the date when the Board's final decision is mailed. 38 U.S.C. § 7266(a). As the Supreme Court saw it, "[t]he case presents the question whether a veteran's failure to file a notice of appeal within the 120-day period should be regarded as having 'jurisdictional' consequences." *Id.* at 431. This court had held that it should be so regarded; the Supreme Court replied: "We hold that it should not." *Id.*

The Court explained: "The question here . . . is whether Congress mandated that the 120-day deadline be 'jurisdictional.' In *Arbaugh*, we applied a 'readily administrable bright line' rule for deciding such questions. Under *Arbaugh*, we look to see if there is any 'clear' indication that Congress wanted the rule to be 'jurisdictional.' This approach is suited to capture Congress' likely intent and also provides helpful guidance for courts and litigants, who will be 'duly instructed' regarding a rule's nature." *Id.* at 435–36 (citations omitted).

The Court then took note of the Government's argument that *Bowles* meant that all statutory deadlines for taking appeals in civil cases are jurisdictional, and since this is a civil case, the 120-day rule is jurisdictional. Replied the Court: "We reject the major premise of this syllogism. *Bowles* did not hold categorically that every deadline for seeking review in civil litigation is jurisdictional. Instead, *Bowles* concerned an appeal from one court to another court. The 'century's worth of precedent and practice in American courts' on which *Bowles* relied involved appeals of that type." *Id.* at 436.

In response to the Government's argument that *Bowles*' reasoning nevertheless should be applied to judicial review of administrative decisions generally, the Court rejected the comparison to mine-run Hobbs Act cases, instead analogizing veterans' cases to Social Security disability benefits cases, both involving special ad-

ministrative procedures and both being 'unusually protective' to claimants.

Finally, the Court noted that the deadline-stating provision does not speak in jurisdictional terms or refer in any way to the jurisdiction of the Veterans Court. It contrasted the deadline-stating provision for appeals from the Veterans Court to this court, which is cast in the same language as the provision for appeals from the district courts to the courts of appeal, the latter having long been held 'jurisdictional.' The Court stated that if Congress intended the same result, it could have stated the provision in the same terms. The Court concluded that "we do not find any clear indication that the 120-day limit was intended to carry the harsh consequences that accompany the jurisdiction tag." *Id.* at 441. The case was remanded to the Federal Circuit to determine whether it falls within any exception that calls for equitable tolling.[7]

An even more recent Supreme Court decision, again dealing with a time bar, must be added to the mix. In *United States v. Kwai Fun Wong*, 135 S. Ct. 1625 (2015), the issue was whether the statute for filing a claim under the Federal Tort Claims Act, 28 U.S.C. § 2401(b), was subject to tolling. The statute had two specified deadlines, one for notifying the appropriate federal agency of the claim—a two year time limit—and the other—a six month limit—for filing the claim in court if the agency made a negative decision on the claim.

---

[7]    On remand, this court vacated the Veterans Court's decision and remanded. The Veterans Court appears to have dismissed for lack of jurisdiction because Mr. Henderson had died while his appeal was pending before the Supreme Court and no one sought to be substituted before the Veterans Court.

Two cases were consolidated for Supreme Court review; in each of the cases the claimant missed one of the deadlines. The provisions had one thing in common—the statute was written to say that a tort claim against the United States "shall be forever barred" unless the deadlines are complied with. The Government argued that the time limits are not subject to tolling as they clearly are intended to be jurisdictional restrictions. However, on appeal to the Ninth Circuit, the court of appeals held that tolling was available in both cases.

In a split decision, the Supreme Court affirmed the court of appeals. Unlike all of the cases since *Irwin* reviewed above, this time the Court began with a discussion of *Irwin*. *Irwin*, said the Court, "sets out the framework for deciding 'the applicability of equitable tolling in suits against the Government.' In *Irwin*, we recognized that time bars in suits between *private* parties are presumptively subject to equitable tolling. That means a court usually may pause the running of a limitations statute in private litigation when a party 'has pursued his rights diligently but some extraordinary circumstance' prevents him from meeting a deadline. We held in *Irwin* that 'the same rebuttable presumption of equitable tolling' should also apply to suits brought against the United States under a statute waiving sovereign immunity." *Id.* at 1630–31 (citations omitted).

The Court added, "the Government must clear a high bar to establish that a statute of limitations is jurisdictional. In recent years, we have repeatedly held that procedural rules, including time bars, cabin a court's power only if Congress has 'clearly state[d]' as much. . . . And in applying that clear statement rule, we have made plain that most time bars are nonjurisdictional. Time and again, we have described filing deadlines as 'quintessentially claim-processing rules,' which 'seek to promote the orderly progress of litigation,' but do not deprive a court of authority to hear a case. [citing, *inter*

*alia, Henderson v. Shinseki*] . . . Congress must do some-
thing special, beyond setting an exception-free deadline,
to tag a statute of limitations as jurisdictional and so
prohibit a court from tolling it." *Id.* at 1632–33 (citations
omitted).

After exhaustively reviewing other time bars, includ-
ing those with phrases like "shall be forever barred," the
Court concluded that the time bar applicable to these
cases contained simply "mundane statute-of-limitations
language," and that "neither this Court nor any other has
accorded those words talismanic power to render time
bars jurisdictional." *Id.* at 1634. In effect, because *Irwin*
said so. There was a strong dissent, which argued that
"[t]he statutory text, its historical roots, and more than a
century of precedents show that this absolute bar is not
subject to equitable tolling." *Id.* at 1639.

4.

I appreciate that this court's precedents, starting with
*Monzo* back in 1984, support the outcome reached by the
majority, and provide an easy pathway to the conclusion
they reach. I also appreciate that an uncritical reading of
the Supreme Court's opinion in *Bowles* supports that
conclusion. But there is now a more nuanced understand-
ing of the *Bowles* opinion, by the same authoring Justice
writing in *Reed Elsevier*: "[n]or did [*Bowles*] hold that all
statutory conditions imposing a time limit should be
considered jurisdictional." 559 U.S. at 167. Add to this
the Court's most recent case, in which a time bar desig-
nated by Congress as one in which a non-complying suit
"shall be forever barred." The Court held it not a bar to
equitable tolling. *Kwai Fun Wong*, 135 S. Ct. at 1634.

In my view, the totality of the Supreme Court's recent
cases add up to a significant rethinking of the "jurisdic-
tional" bar to equitable tolling. Attempts to distinguish
among the Court's opinions, on the basis that only some
dealt with time bars while others required that different

statutory conditions be met, is misguided. The basic issue is the same, and the Court itself did not make such background differences the controlling distinctions.

Rather, the Court examined the statutory context, looking for a clear indication that Congress intended that the *Irwin* presumption of the availability of equitable tolling should be considered rebutted. That is why in addressing the jurisdictional question, among other things, the Court asked about whether the statutory requirement "speak[s] in jurisdictional terms," *Arbaugh*, 546 U.S. at 515; whether the cases at issue are longstanding and left undisturbed by Congress, see the concurring opinion in *Reed Elsevier*, 559 U.S. at 173; and whether the case involves a time bar from one court to another (more likely to be seen as "jurisdictional") or whether it is from an administrative agency to a court, the latter possibly reflecting a program "'unusually protective' of claimants," *Henderson*, 562 U.S. at 436 (citation omitted).

Given this backdrop, how should the case before this court be decided? To do justice to Mr. Fedora's case, at a minimum the time bar has to be examined to determine whether Congress has, in some clear manner, rebutted the presumption of the availability of equitable tolling. The burden has been placed on the Government to convince the court that Congress intended that the rebuttable presumption is rebutted.

Finding congressional intent to rebut the presumption simply because the time bar is stated in a statute is no longer appropriate. Even the author of *Bowles* seems to have retreated from that proposition. What additional considerations will persuade that the presumption has or has not been rebutted depends on the context of a particular statute. Taking into consideration the criteria suggested in the Court's opinions, as outlined above, Mr. Fedora presents a substantial case for the availability of

equitable relief—nothing in § 7703(b)(1)(A) speaks in jurisdictional terms, there is no long-standing line of decisions on MSPB appeals to this court that suggests congressional acquiescence, and this is an appeal from an administrative agency to a court, with considerable support for the proposition that MSPB proceedings are intended to be specially protective of claimants.[8]

But we should not rush to judgment. The case came to us as a pro se filing with only an informal brief of petitioner, and no oral argument. Neither the Government in its Respondent's brief nor the Intervenor, USPS, in its brief did more than repeat the "mandatory and jurisdictional" chant in support of their argument that we are without "jurisdiction" over Mr. Fedora's appeal because his filing was untimely.

Because of the significance of this issue, and because our court's precedents have not recognized the current state of Supreme Court law on the subject, a thorough examination with competent opposing counsel is called for. The case should be rebriefed before an en banc court on the timeliness filing question, with assigned counsel for Mr. Fedora, and an opportunity for the Government and Intervenor to address the question of whether there is any basis for a finding that the presumption under *Irwin* of equitable tolling regarding the bar in § 7703(b)(1)(A) has been rebutted.

The Government, in the words of the Supreme Court, "must clear a high bar to establish that a statute of limitations is jurisdictional," *Kwai Fun Wong*, 135 S. Ct. at 1632. Because the petitioner was pro se, the Government

---

[8]    *See, e.g.*, 5 U.S.C. § 2301(b)(8) (under governing merit system principles, employees must be "protected against arbitrary action, personal favoritism, or coercion for partisan purposes").

may not have appreciated the situation in which this case puts it. I respect the argument that the Government has had its day in court, and obviously failed to make its case, but in the interest of fairness I favor giving the Government an opportunity to attempt to clear that high bar. A well-argued case, with competent counsel on both sides, will help this court come to a correct conclusion regarding the law of the case, a conclusion giving full attention and respect to the opinions of the Supreme Court.

Accordingly, I respectfully dissent from any contrary disposition of this appeal.